UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SEKUK GLOBAL ENTERPRISES, On Behalf Of Itself And All Others Similarly Situated,<br>Plaintiff,<br>v.<br>KVH INDUSTRIES, INC., MARTIN A. KITS VAN HEYNINGEN, and PATRICK J. SPRATT,<br>Defendants. | CIVIL ACTION No. 04-306-ML<br>(CONSOLIDATED ACTION) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Defendants, KVH Industries, Inc., Martin A. Kits van Heyningen, and Patrick J. Spratt, hereby oppose Plaintiffs' Motion for Class Certification, dated December 13, 2005. As grounds for their opposition, Defendants respectfully refer the Court to their Memorandum of Law in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification, filed herewith.

Respectfully submitted,

May 15, 2006

Brooks R. Magratten (# 3585)
VETTER & WHITE
Attorneys for Defendants
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SEKUK GLOBAL ENTERPRISES, On Behalf Of Itself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KVH INDUSTRIES, INC., MARTIN A. KITS VAN HEYNINGEN, and PATRICK J. SPRATT,<br><br>Defendants. | Civil Action No. 04-306-ML<br>(CONSOLIDATED ACTION) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

May 15, 2006

Brooks R. Magratten (# 3585)
VETTER & WHITE
Attorneys for Defendants
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]

OF COUNSEL:
Brandon F. White
Matthew C. Baltay
Kalun Lee
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 [FAX]

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... ii

BACKGROUND FACTS ..... 1

I. BECAUSE NEITHER CLASS REPRESENTATIVE CAN ADEQUATELY REPRESENT THE REQUESTED CLASS, CLASS CERTIFICATION IS INAPPROPRIATE. ..... 2

A. General Standards. ..... 2

B. TAPP Is An Inadequate Class Representative. ..... 3

C. The Brauns Are Atypical And Inadequate Representatives. ..... 10

1. Judith Braun Will Not Protect Class Interests. ..... 10

2. Irving Braun Will Not Protect Class Interests. ..... 11

3. The Brauns Are Subject To A Unique Defense. ..... 12

II. THE CLASS CANNOT BE CERTIFIED TO INCLUDE IN-AND-OUT TRADERS. ..... 16

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

## CASES

In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267 (3d Cir. 2004) .......... 14, 16

Akerman v. Oryx Comm'ns, Inc., 810 F.2d 336 (2d Cir. 1987) .......... 14, 15

Andrews v. Bechtel Power Corp., 780 F.2d 124 (1st Cir. 1985) .......... 2, 3

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 185 F.R.D. 172 (S.D.N.Y. 1999) .......... 5, 6

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52 (2d Cir. 2000) .......... 13

In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525 (D. Mass. 1991) .......... 13

Beck v. Status Game Corp., No. 89 Civ. 2923, 1995 WL 422067 (S.D.N.Y. July 14, 1995) .......... 5

Berger v. Compaq Computer Corp., 257 F.3d 475 (5th Cir. 2001) .......... 3, 4, 10

Blatch v. Franco, No. 97-Civ-391, 2002 WL 342453 (S.D.N.Y. Mar. 5, 2002) .......... 9

Califano v. Yamasaki, 442 U.S. 682 (1979) .......... 2

In re Compuware Sec. Litig., 386 F. Supp. 2d 913 (E.D. Mich. 2005) .......... 17

In re CornerStone Propane Partners, L.P. Sec. Litig., No. 03-2522, 2006 WL 1180267 (N.D. Cal. May 3, 2006) .......... 18

Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005) .......... 17, 18

In re Galileo Corp. S'holders Litig., 127 F. Supp. 2d 251 (D. Mass. 2001) .......... 4

Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176 (2d Cir. 1990) .......... 13

General Telegraph Co. v. Falcon, 457 U.S. 147 (1982) .......... 2

Grace v. Perception Tech. Corp., 128 F.R.D. 165 (D. Mass. 1989) .......... 13

Griffin v. GK Intelligent Sys., Inc., 196 F.R.D. 298 (S.D. Tex. 2000) .......... 5, 12

Hanon v. Dataproducts Corp., 976 F.2d 497 (9th Cir. 1992) .......... 13, 16

Hochberg v. Howlett, No. 92-Civ-1822, 1994 WL 9677 (S.D.N.Y. Jan. 10, 1994) .......... 9

J.H. John & Co. v. Am. Appraisal Assoc., Inc., 628 F.2d 994 (7th Cir. 1980) .......... 13, 14, 16

Kas v. Fin. Gen. Bankshares, Inc., 105 F.R.D. 453 (D.D.C. 1985)....13

Kelley v. Mid-America Racing Stables, Inc., 139 F.R.D. 405 (W.D. Okla. 1990)....5, 12

Key v. Gillette Co., 782 F.2d 5 (1st Cir. 1986)....3, 10

Kinney v. Metro. Global Media, Inc., No. 99-579-ML, 2002 WL 31015604 (D.R.I. Aug. 22, 2002)....5, 13

Kovaleff v. Piano, 142 F.R.D. 406 (S.D.N.Y. 1992)....13

Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072 (2d Cir. 1995)....3, 10

In re Microstrategy Inc. Sec. Litig., 110 F. Supp. 2d 427 (E.D. Va. 2000)....13

Norman v. Arcs Equities Corp., 72 F.R.D. 502 (S.D.N.Y. 1976)....9

In re PolyMedica Corp. Sec. Litig., 432 F.3d 1 (1st Cir. 2005)....3

Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp., 183 F.R.D. 687 (D. Colo. 1998)....13

Rolex Employees Ret. Trust v. Mentor Graphics Corp., 136 F.R.D. 658 (D. Or. 1991)....5

Rosen v. Textron, Inc., 369 F. Supp. 2d 204 (D.R.I. 2005)....13

In re Safeguard Scientifics, 216 F.R.D. 577 (E.D. Pa. 2003)....13

Salsitz v. Peltz, 210 F.R.D. 95 (S.D.N.Y. 2002)....13

Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32 (1st Cir. 2003)....2

Warren v. Reserve Fund, Inc., 728 F.2d 741 (5th Cir. 1984)....13, 16

**STATUTES**

15 U.S.C. § 77k(e) (2006)....14

15 U.S.C. § 77*l*(b) (2006)....14

Fed. R. Civ. P. 23(a)(4)....3, 10, 11, 19

Fed. R. Civ. P. 30(b)(6)....2, 3, 6

## MISCELLANEOUS

Charles Allen Wright et al., Federal Practice & Procedure (3d ed. 2005)....................................4

James Wm. Moore, Moore's Federal Practice (3d ed. 2006) ..................................................4, 14

Daniel P. Lefler & Allan W. Kleidon, Just How Much Damage Did Those Misrepresentations Actually Cause and to Whom?: Damages Measurement in "Fraud on the Market" Securities Class Actions, 1505 Practising Law Inst., Corp. Law & Prac. Course Handbook Series 285 (2005) ......................................................................................17

Defendants KVH Industries, Inc. ("KVH"), Martin A. Kits van Heyningen and Patrick J. Spratt hereby oppose Plaintiffs' Motion for Class Certification. Plaintiffs bear the burden of establishing that all of the requisites for class certification are met, and the Court must conduct a "rigorous analysis" before certifying a class. Here, plaintiffs' purported Section 10(b) claim class representative, Teamster Affiliates Pension Plan ("TAPP"), has so little knowledge of and involvement in this case that it merely lends its name to a suit controlled entirely by class counsel, rendering TAPP an inadequate representative. Plaintiffs' purported class representatives on the Section 11 claims, Judith and Irving S. Braun (the "Brauns"), likewise have so little knowledge of and involvement in this case that they cannot adequately and fairly represent the purported class. Further, the Brauns face a "unique defense" as to loss causation because they sold all of their KVH stock within a week of purchasing it, before the "truth emerged," and suffered no loss, thus rendering the Braun Section 11 representatives atypical and unable to represent this class. As a result, neither of the class representatives can serve, and no class can be certified. Lastly, in the event that this Court certifies a class over defendants' objections, the class cannot include so-called "in-and-out" purchasers who by law suffered no damages.

**BACKGROUND FACTS**

Plaintiffs have moved to certify a class consisting of all those who purchased KVH stock between October 1, 2003 and July 2, 2004 and were damaged thereby. Plaintiffs' Motion for Class Certification 1. The proposed class representatives are (1) the Brauns and (2) TAPP. Id. TAPP allegedly purchased KVH stock during the proposed class period, but not in KVH's secondary offering, while the Brauns allegedly purchased KVH stock only in the secondary offering. See Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws ("Consolidated Complaint") ¶ 7 (TAPP) and ¶ 8 (Brauns). TAPP would serve

as the class representative for plaintiffs' Section 10(b) claims and the Brauns would serve as the class representatives for plaintiffs' secondary offering-related Sections 11 and 12(a) claims. See Consolidated Complaint Counts I-V.

On December 13, 2005, plaintiffs filed their Motion for Class Certification. On December 16, 2005, defendants served class discovery document requests and interrogatories. On March 8, 2006, the parties moved to extend the class certification briefing schedule because plaintiffs had been unable to respond to the discovery requests and offer deposition dates for the class representatives. See Dkt. 59. The Court granted that motion, setting a deadline for defendants' class certification opposition of May 15, 2006 and plaintiffs' class certification reply, if any, of June 15, 2006. See Dkt. 60. Defendants took the deposition of purported class representative Irving S. Braun on March 29, 2006, see Dkt. 61, and of purported class representative TAPP, pursuant to Fed. R. Civ. P. 30(b)(6), on April 20, 2006. See Dkt. 62.

## I. BECAUSE NEITHER CLASS REPRESENTATIVE CAN ADEQUATELY REPRESENT THE REQUESTED CLASS, CLASS CERTIFICATION IS INAPPROPRIATE.

### A. General Standards.

Plaintiffs bear the burden of establishing that class certification is appropriate. General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). A class cannot be certified if the plaintiff has not established that the four requirements of Rule 23(a) -- numerosity, commonality, typicality, and adequacy of representation -- and one of the several requirements of Rule 23(b) are met. Smilow, 323 F.3d at 38. Before certifying a class, "[a] district court must conduct a rigorous analysis of the prerequisites established by Rule 23." Id. (citing General Tel., 457 U.S. at 161). "District courts have broad discretion concerning issues of class certification." Andrews v. Bechtel Power Corp., 780 F.2d 124, 129-30 (1st Cir. 1985) (citing Califano v. Yamasaki, 442 U.S. 682, 703 (1979)).

That is, "[u]nless the district court operated under an erroneous rule of law, we [the First Circuit] will not reverse a grant or denial of class certification except for 'abuse of discretion.'" Andrews, 780 F.2d at 129-30 (citing Gulf Oil Co. v. Bernard, 452 U.S. 89, 100-01 (1981)); see also In re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 4 (1st Cir. 2005) (review of class certification rulings is "'highly deferential'").

### B. TAPP Is An Inadequate Class Representative.

Class discovery and defendants' Rule 30(b)(6) deposition of TAPP raise grave questions about TAPP's commitment to prosecute the case and monitor class counsel. TAPP's apparent abdication of its duties to the absent class members renders TAPP an inadequate representative. Accordingly, the class of Section 10(b) claimants,[1] for which TAPP is the sole proffered class representative, cannot be certified.

Under Fed. R. Civ. P. 23(a)(4), the class representative must show that, as class representative, it will fairly and adequately protect the interests of the class. The courts are clear in their interpretation of Rule 23(a)(4) that class representative status may properly be denied "where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1077-78 (2d Cir. 1995); see also Berger v. Compaq Computer Corp., 257 F.3d 475, 483-84 (5th Cir. 2001) ("[T]he class representatives [must] possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation."). The courts so hold because a class action judgment or settlement is binding on absent class members, and due process requires that the court ensure that their rights are adequately protected. See Key v.

---

[1] Within this category would also fall plaintiffs' Section 20(a) claims, which are derivative of their Section 10(b) claims.

Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986) ("One of the most important of these requirements is that the representative party fairly and adequately represent the interests of the class. This requirement is particularly important because the due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff."). Accordingly, the adequacy of representation inquiry is of paramount importance.

The goal of the adequacy inquiry, in part, "is to ensure that the parties are not simply lending their names to a suit controlled entirely by a class attorney." 7A Charles Allen Wright et al., Federal Practice & Procedure § 1766 at 372 (3d ed. 2005); 5 James Wm. Moore, Moore's Federal Practice § 23.25[2][c] (3d ed. 2006) ("Although counsel properly has a substantial influence on the course of class litigation, the class representative may not simply abdicate conduct of the case to counsel, but must supervise class counsel, at least minimally."). The requirement that the class representatives maintain an active role is particularly germane in securities class actions subsequent to the 1995 enactment of the Private Securities Litigation Reform Act ("PSLRA"), which mandates that litigation be brought and maintained by the client and not counsel. See In re Galileo Corp. S'holders Litig., 127 F. Supp. 2d 251, 260 (D. Mass. 2001) (The PSLRA was enacted "in a bipartisan effort to curb abuse in private securities litigation, especially the filing of so-called strike suits. In particular, Congress sought to reform private securities litigation to discourage unmeritorious class actions, including actions brought because of a decline in stock prices." The court listed as among the three aims of the statute "to empower investors so that they -- not their lawyers -- exercise primary control over private securities litigation."); see also Berger, 257 F.3d at 483-84 (noting the "PSLRA's requirement that securities class actions be managed by active, able class representatives who are informed

and can demonstrate they are directing the litigation" and ruling "in complex class action securities cases governed by the PSLRA, the adequacy standard must reflect the governing principles of the Act and, particularly, Congress's emphatic command that competent plaintiffs, rather than lawyers, direct such cases").

While challenges to the adequacy of the class representative's knowledge "are rarely appropriate," Kinney v. Metro Global Media, Inc., No. 99-579-ML, 2002 WL 31015604, at *5 (D.R.I. Aug. 22, 2002), such challenges nevertheless succeed when the circumstances so merit. See, e.g., Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 185 F.R.D. 172, 172 (S.D.N.Y. 1999) (class representative inadequate where he lacked fundamental understanding of the issues in the case and failed to stay abreast of the litigation); Beck v. Status Game Corp., No. 89 Civ. 2923, 1995 WL 422067, at *7 (S.D.N.Y. July 14, 1995) (finding plaintiffs' lack of familiarity with securities fraud suit rendered them inadequate class representatives); Kelley v. Mid-Am. Racing Stables, Inc., 139 F.R.D. 405, 410 (W.D. Okla. 1990) (denying class certification where there was an "almost total lack of personal knowledge of their claims on the plaintiffs' part. From all appearances, the plaintiffs have abdicated their role to their attorneys, who now have become the de facto plaintiffs"); Rolex Employees Ret. Trust v. Mentor Graphics Corp., 136 F.R.D. 658, 666 (D. Or. 1991) (class not certified where representative's deposition revealed unfamiliarity with the basic elements of the case, including what the allegations of the complaint were and which allegations of the complaint pertained to which defendants); Griffin v. GK Intelligent Sys., Inc., 196 F.R.D. 298, 302 (S.D. Tex. 2000) (finding plaintiffs inadequate as class representatives because they "were solicited for this lawsuit and have taken little or no supervisory role over lead counsel").

The question of a class representative's familiarity with and participation in the case is one of degree. The class representative need not be an expert in the law or facts of the case; on the other hand, the representative must be sufficiently involved that the court is confident that the litigation is being brought and guided by a plaintiff, and not just counsel. Baffa, 185 F.R.D. at 175. Here, class discovery reveals that this is one of the cases in which the proffered class representative's knowledge of and participation in the matter is so limited, in fact bordering on non-existent, that it cannot serve as class representative.

Defendants took TAPP's Rule 30(b)(6) deposition on April 20, 2006. Defendants' Rule 30(b)(6) deposition notice required TAPP to designate one or more persons to testify on TAPP's behalf regarding this litigation, including specifically, TAPP's "participation in and knowledge of this Litigation, including ... TAPP's involvement in and management of this Litigation." See Notice of Deposition of Teamsters Affiliates Pension Plan and Request for Documents Pursuant to Rule 30 (attached hereto at Ex. A). TAPP put forth Dale C. Harrison, Assistant Director of Investment and Pension Administration. See Deposition Transcript of Dale Harrison, April 20, 2006, 6:21-6:23, 18:6-18:11 ("TAPP Depo.") (excerpts of TAPP Depo. attached hereto at Ex. B). Mr. Harrison testified that he consented to speak for TAPP on these subjects and was knowledgeable thereon. Id. 8:2-12:5. As TAPP's Rule 30(b)(6) designee, Mr. Harrison spoke for and bound the corporate entity with his testimony. See Fed. R. Civ. P. 30(b)(6).

TAPP's knowledge of the case is virtually non-existent. TAPP did not know in which court the case is pending, opining that the case is pending in New York. See TAPP Depo. 99:20-99:23. Besides the Company, TAPP did not know who else it sued. See id. 99:24-100:8, 130:1-130:24. TAPP's designee could not identify the Brauns, its co-plaintiffs. See id. 102:16-103:2. With regard to the Consolidated Complaint, TAPP's designee knew close to nothing. TAPP's

designee did not know the scope of the requested class period and thought that it stretched into 2005. See id. 67:6-67:9. As another example, even though the Consolidated Complaint is based on the allegations of four "confidential informants," TAPP's designee did not know that its own complaint contained allegations involving confidential informants. See id. 131:15-132:8. TAPP's designee did not know what investigations, if any, were made into the allegations in the Consolidated Complaint. See id. 99:11-99:19. TAPP's designee did not know who drafted the Consolidated Complaint. See id. 145:1-145:13. TAPP's designee did not know what should or should not be in the Consolidated Complaint, and he testified that TAPP does not have the time to dig into the facts alleged in the Consolidated Complaint and that it leaves such matters to the Lerach lawyers. See id. 100:9-100:18, 145:14-146:4. In fact, TAPP went so far as to testify that other than knowing that it suffered losses to its portfolio, it did not know any specifics of the Consolidated Complaint at all, and TAPP's designee had not ever read it. See id. 132:9-132:14. This lack of knowledge of the most basic information about the case evidences an abdication of oversight.

TAPP also demonstrated a complete lack of knowledge regarding the running of the case. For example, TAPP's designee did not know if Lerach would be compensated for its efforts in this case or who would pay the daily costs of running the case. See id. 15:14-16:13.

It is clear that Lerach, and not TAPP, runs the case and that Lerach found TAPP to serve as its lead plaintiff (rather than TAPP finding Lerach to serve as its lead counsel). TAPP's designee testified that Lerach alerted TAPP about the case and asked TAPP to serve as lead plaintiff. See id. 96:2-97:2. Further, TAPP's designee testified that TAPP leaves the running of the case to the lawyers and that TAPP does not have the "luxury" of overseeing the case on a day-to-day basis. See id. 127:10-127:22. The only filings pertaining to the case in TAPP's files

are an obsolete, pre-consolidation complaint, KVH's first document requests and interrogatories, and the Court's order appointing lead plaintiffs. See id. 125:5-125:20. Not only has TAPP's designee never read the Complaint, he has not read the instant Motion for Class Certification. See id. 124:21-125:1.

Additionally, TAPP's ability to participate meaningfully in this litigation is in question. For example, while defendants served their class certification document requests and interrogatories on TAPP on December 16, 2005, TAPP did not fully respond until April 17, 2006, when forced to do so by the April 20 deposition. See Letter from Matthew C. Baltay to Samuel H. Rudman (Feb. 28, 2006) (attached hereto at Ex. C); E-mail string between Matthew C. Baltay and Samuel H. Rudman (Feb. 17, 2006) (attached hereto at Ex. D); E-mail string between Matthew C. Baltay and Russel J. Gunyan (April 17, 2006) (attached hereto at Ex. E). Even so, while defendants requested all documents relating to this litigation as well as all documents relating to TAPP's investment policies and stock holdings, TAPP produced a grand total of 138 pages of material. See Letter from Russel J. Gunyan to Matthew C. Baltay (April 18, 2006) (attached hereto at Ex. F); see also Defendant KVH Industries, Inc.'s First Set of Document Requests to Plaintiffs (attached hereto at Ex. G). TAPP admitted at deposition that it failed to produce numerous categories of responsive documentation and did so without meaningful justification. See TAPP Depo. 44:5-44:16, 47:14-47:24, 48:5-48:10, 52:6-52:15, 59:20-60:10, 72:5-74:16. For example, while defendants requested all summaries showing TAPP's holdings of KVH stock over time, and TAPP testified that there would be at least 36 responsive monthly reports, TAPP produced but a single such statement, for June 2004. See id. 73:9-74:16. When pressed, TAPP admitted that these documents are in its offices and there is no reason why they were not produced. See id.

TAPP's interrogatory responses are also incomplete and inaccurate, further calling into question TAPP's adequacy to serve an entire class. For example, TAPP responded in writing, under oath, that its investment holdings total $800 million, see Plaintiffs' Responses and Objections to Defendant Martin Kits van Heyningen's First Set of Interrogatories to Plaintiffs (attached hereto at Ex. H), but at deposition TAPP admitted that this figure is inaccurate and overstated, and that the correct figure is between $500 and $620 million. See TAPP Depo. 32:14-33:4. TAPP also did not answer defendants' interrogatory asking about the circumstances leading to its involvement in the case and could not explain why it did not answer the question. See id. 31:24-32:10. As another example, while defendants directly asked by interrogatory for TAPP to identify all cases in which it serves as a plaintiff, TAPP identified three, but inexplicably failed to identify a fourth currently-pending case in which it serves as a plaintiff. See id. 36:3-36:19. Similarly, TAPP admitted that the figure it supplied in its motion for appointment as lead plaintiff with respect to its KVH holdings is inaccurate and that certain class period sales or holdings, which would reduce KVH's purported losses, were overlooked and omitted. See id. 85:4-85:17, 94:7-94:10.

TAPP's overall failure to make meaningful and accurate discovery reflects a lack of ability to prosecute the litigation. Hochberg v. Howlett, No. 92-Civ-1822, 1994 WL 9677, at *2 (S.D.N.Y. Jan. 10, 1994) (finding that plaintiffs had failed to demonstrate their ability to adequately represent the class because they had not fully participated in discovery). Indeed, "'[o]ne who will not comply wholeheartedly and fully with discovery … is not to be regarded … as one whom the important fiduciary obligation of acting as a class representative should be entrusted.'" Blatch v. Franco, No. 97-Civ-391, 2002 WL 342453, at *4 (S.D.N.Y. Mar. 5, 2002) (quoting Norman v. Arcs Equities Corp., 72 F.R.D. 502, 506 (S.D.N.Y. 1976)).

In summary, TAPP has "so little knowledge of and involvement in the class action that [it] would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." Maywalt, 67 F.3d at 1077-78. TAPP cannot serve as class representative consistent with the "PSLRA's requirement that securities class actions be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation" and "Congress's emphatic command that competent plaintiffs, rather than lawyers, direct such cases." Berger, 257 F.3d at 483-84. Plaintiffs have not met their burden of showing that TAPP will adequately protect the interests of the absent class members as required by the due process clause. Key, 782 F.2d at 7.

**C. The Brauns Are Atypical And Inadequate Representatives.**

Plaintiffs have put forth both Judith and Irving Braun as purported class representatives. According to Irving Braun, however, Judith Braun has no knowledge of this case and does not want to serve as a class representative. With regard to Irving Braun, through his admitted lack of involvement in this case, he has shown himself to be inadequate as a class representative. See Fed. R. Civ. P. 23(a)(4). Further, the Brauns are subject to a unique loss causation defense because they suffered no legally cognizable loss and thus are atypical and cannot serve as class representatives. See Fed. R. Civ. P. 23(a)(3).

1. Judith Braun Will Not Protect Class Interests.

Both Judith and Irving Braun are named as proposed class representatives. See Motion for Class Certification 1. Both Judith and Irving Braun signed a certification that was submitted to this Court with the Consolidated Complaint. See Braun Certification submitted with Consolidated Complaint ("Braun Certification") (attached hereto at Ex. I). **That certification, signed by both Judith and Irving Braun under penalty of perjury, attested that they had reviewed the complaint, authorized its filing and that both are willing to serve as class**

**representatives.** Id. Judith and Irving Braun also signed declarations that their responses to Defendant Martin Kits van Heyningen's First Set of Interrogatories were true and correct. When defendants requested to take the deposition of Judith Braun, they were told that she has no involvement and would be withdrawn as class representative. To date, she has not been withdrawn. At the March 29, 2006 deposition of Irving Braun, he testified that Judith Braun knows nothing of this case and probably did not even read the certification before signing it, despite attesting that she would serve as class representative. According to Irving Braun:

> [Mrs. Braun] really doesn't want to get involved. She will basically tell you I know nothing, I hear nothing, I see nothing, you know Sergeant Schultz, Hogan's Heroes, that's what her answer would be.

See Deposition Transcript of Irving Braun, March 29, 2006, 137:11-137:16 ("Braun Depo.") (excerpts of Braun Depo. attached hereto at Ex. J). Accordingly, Judith Braun cannot serve as class representative under Fed. R. Civ. P. 23(a)(4).

2. Irving Braun Will Not Protect Class Interests.

Irving Braun has failed to be involved in the case and has failed to oversee class counsel. Having filed at least seven class actions over the past twelve years, and having applied to be the class representative in at least two of those cases, Mr. Braun should be familiar with the fiduciary responsibilities of a class representative, yet he displays a notable lack of involvement in this case. For example, he does not know what the attorneys in this case did to investigate the allegations in the Consolidated Complaint. Id. 122:5-122:12. Mr. Braun was also unable to answer any questions at his deposition regarding who the investigators were for this case and who paid them. Id. 124:14-125:2. According to Mr. Braun, he does not know how much the investigators charged because he did not approve their hiring and, in this case, the lawyers do what they have to do and he has "no control over that end." Id. 124:21-125:12. He also does not know who drafted the Consolidated Complaint, id. 133:25-134:12, how many defendants were

named in this suit, id. 141:20-142:10, and how many cases were consolidated into this case, id. 144:16-144:18. He has never communicated with any of the other plaintiffs in this case, including TAPP, and he does not know what TAPP's claims are. Id. 143:18-144:15 ("I have no communication with [TAPP] because … I have nothing to do with them.").

Most troubling is Mr. Braun's ignorance of his attorneys' fee arrangements in this case. Although he is aware that Lerach has taken this case on contingency and that they will split any fees with Mr. Braun's other attorney, Curtis V. Trinko,[2] Mr. Braun was unable to explain the details of the fee arrangement at his deposition. See id. 155:10-156:21. This is not surprising, since Mr. Braun does not have a written fee agreement with either Lerach or Mr. Trinko in this case. Id. 149:21-150:25, 154:20-154:25. Indeed, Mr. Braun is not even certain that he is represented by Lerach. Id. 146:12-148:18. It is apparent from the record that the Brauns have abdicated all responsibility for the conduct of this lawsuit to the Lerach lawyers and cannot adequately serve as class representatives. See Griffin, 196 F.R.D. at 302 (plaintiffs were inadequate as class representatives because "[t]hey do not participate in litigation decisions, do not receive regular cost/expense information, and they learn of activity in the case when they are copied on matters already completed"); Kelley, 139 F.R.D. at 410 (denying class certification in part because the plaintiffs abdicated their role to their attorneys).

3. The Brauns are Subject to a Unique Defense.

As this Court has explained, pursuant to Rule 23(a)(3), a proposed class representative is atypical and cannot serve where "unique defenses" exist as to that plaintiff:

> Where, however, "a named plaintiff may be subject to unique defenses that would divert attention from the common claims of the class, that plaintiff cannot be considered typical of the class."

[2] Mr. Trinko has not requested that this Court appoint him co-counsel and it remains unclear why Lerach would require the assistance of another attorney.

Kinney, 2002 WL 31015604, at *4; see also Rosen v. Textron, Inc., 369 F. Supp. 2d 204, 208 (D.R.I. 2005) ("[W]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative."). Courts not infrequently deny class certification on these grounds. See Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (affirming denial of certification in securities fraud case on typicality grounds because named plaintiff was subject to unique defenses); Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) (same); Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) (same; securities fraud case); Warren v. Reserve Fund, Inc., 728 F.2d 741, 747 (5th Cir. 1984) (same; securities fraud case); J.H. John & Co. v. Am. Appraisal Assoc., Inc., 628 F.2d 994, 999 (7th Cir. 1980) (same; securities fraud case).[3]

"The rationale behind this hesitance is a concern that representation of the class will suffer if the named plaintiff is preoccupied with a defense which is applicable only to himself." Warren, 728 F.2d at 747. In assessing whether a "unique defense" exists for class certification purposes, the court need not judge the ultimate merits of the defense, but rather should simply determine whether the defense may be raised. See Warren, 728 F.2d at 747 ("While the availability or ultimate success of this defense in Warren's individual cause of action is not

[3] See also In re Microstrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000) (institutional investor lead plaintiff atypical because of potential unique defense stemming from fact it incurred most of its losses before defendants issued the first correction); Grace v. Perception Tech. Corp., 128 F.R.D. 165, 169 (D. Mass. 1989) (class certification denied as to proposed representatives who were privy to inside information before purchasing their stock because "they may be subject to unique defenses at trial which would divert attention away from the common claims of the class members they seek to represent"); In re Safeguard Scientifics, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (lead plaintiff atypical because subject to unique damages defense); Salsitz v. Peltz, 210 F.R.D. 95, 98 (S.D.N.Y. 2002) (proposed class representative subject to unique reliance defense; class not certified); Queen Uno Ltd. P'ship v. Coeur D'Alene Mines Corp., 183 F.R.D. 687, 692 (D. Colo. 1998) (similar); Kovaleff v. Piano, 142 F.R.D. 406, 408 (S.D.N.Y. 1992) (same); In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1533-34 (D. Mass. 1991) (same); Kas v. Fin. Gen. Bankshares, Inc., 105 F.R.D. 453, 461-62 (D.D.C. 1985) (same).

certain, we have held in the past that the presence of this characteristic peculiar to the named plaintiff does present a sufficient question of typicality to justify a district court's decision to deny class certification."); J.H. John & Co., 628 F.2d at 999 ("[T]he presence of even an **arguable** defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation.") (emphasis added); 5 Moore, supra, § 23.25[2][b] ("To preclude class certification, the defendant need not establish that the class representative's claim ultimately would be defeated by the unique defense. Rather, class treatment generally will be denied if a unique defense is even arguably present.").

The Brauns bring claims under Sections 11 and 12(a)(2) of the Securities Act of 1933. In Sections 11 and 12(a)(2) claims, a plaintiff need not prove causation of damages; however, per the statutory text, defendants may establish the so-called "negative causation" defense whereby plaintiff cannot recover that portion of a stock price drop shown by defendant to have been caused by something other than its misstatement. See 15 U.S.C. § 77k(e) (Section 11) (2006) ("[I]f the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which his liability is asserted ... such portion of or all such damages shall not be recoverable."); 15 U.S.C. § 77*l*(b) (Section 12(a)(2)) (2006) (same). Case law applies the simple statutory text without alteration. See In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 277 (3d Cir. 2004) ("Under sections 11 and 12(a)(2), plaintiffs do not bear the burden of proving causation. It is the defendants who may assert, as an affirmative defense, that a lower share value did not result from any nondisclosure or false statement."); Akerman v. Oryx Comm'ns, Inc., 810 F.2d 336, 340-41 (2d Cir. 1987) (same). To prevail on this "negative causation"

defense, a defendant may show that the Sections 11 and/or 12(a)(2) claimant sold his stock before any corrective disclosure. Akerman, 810 F.2d at 342 (under Section 11 negative causation defense, "[t]he price decline before disclosure may not be charged to defendants").

The Brauns purchased 300 shares of KVH stock on February 10, 2004 and sold all 300 shares on February 20, 2004, for a total loss of $700.[4] See Braun Certification. The Brauns never purchased any other KVH stock. See id. The plaintiffs' oft-repeated allegation is that there was only a single corrective disclosure, which was made on July 6, 2004. See Memorandum and Order on Defendants' Motion to Dismiss 4-5, 29, Aug. 11, 2005 ("Plaintiffs' allegations regarding loss causation center on a July 6, 2004 KVH press release."); Compl. ¶¶ 79-80 ("On July 6, 2004, prior to the market's opening, KVH's problems became known to the public when the Company issued a press release announcing its preliminary second quarter 2002 financial results.... Market reaction to defendants' belated disclosures was swift and severe."); Memorandum in Support of Class Certification 3 ("On July 6, 2004, before the markets opened, KVH stunned the investing public by announcing that it was slashing the retail price of the A5."); Memorandum In Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint 10 (same). Notably, plaintiffs have not alleged any corrective disclosure occurring between the Brauns' February 10, 2004 purchase and their sale ten days later.

While defendants did not raise this negative causation defense to plaintiffs' Sections 11 and 12(a)(2) claims in their motion to dismiss (such an affirmative defense being unavailable on

[4] One is also left to wonder whether the Brauns will be motivated to make the necessary sacrifices to pursue this case given that their maximum losses total $700.

a motion to dismiss),[5] defendants nevertheless have this defense available to them and could invoke it in a motion for summary judgment or at trial. The Brauns would find themselves battling this issue, which would be a disabling distraction. Warren, 728 F.2d at 747 ("The rationale behind this hesitance is a concern that representation of the class will suffer if the named plaintiff is preoccupied with a defense which is applicable only to himself."). Because of this unique defense, the Brauns lack typicality. A more typical class representative might be a stockholder who purchased in the February 2004 secondary offering and held his shares until the alleged July 6, 2004 corrective disclosure.[6]

Because the Brauns are subject to a "unique defense," their claims are atypical and they cannot serve as class representatives. Accordingly, at this juncture, plaintiffs' Sections 11 and 12(a)(2) claims, and all claims derivative thereof, cannot be certified. Hanon, 976 F.2d at 508 (affirming denial of class certification in securities fraud case because of unique defense); Warren, 728 F.2d at 747 (same); J.H. John & Co., 628 F.2d at 999 (same).

## II. THE CLASS CANNOT BE CERTIFIED TO INCLUDE IN-AND-OUT TRADERS.

Even if this Court certifies the class over defendants' objections, the class nevertheless cannot be certified in as broad a fashion as plaintiffs request. Plaintiffs seek to certify a class of all persons and entities who purchased KVH stock from October 1, 2003 through July 2, 2004.

---

[5] See In re Adams Golf, 381 F.3d at 277 ("Under sections 11 and 12(a)(2), plaintiffs do not bear the burden of proving causation. It is the defendants who may assert, as an affirmative defense, that a lower share value did not result from any nondisclosure or false statement. While a defendant may be able to prove this 'negative causation' theory, an affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6).").

[6] In fact, Howard Vogel, whose case, Vogel v. KVH Industries, Inc., et al., Civ. A. No. 04-320ML (D.R.I. filed July 27, 2004), was consolidated with this case, would have been less vulnerable than the Brauns to this "unique defense." Mr. Vogel, like the Brauns, purchased KVH stock during the secondary offering. Unlike the Brauns, however, he did not sell his 1,000 shares before the alleged July 6, 2004 corrective disclosure. Certification of Howard Vogel (attached hereto at Ex. K). Curiously, Mr. Vogel, who like the Brauns is represented by Barry J. Kusinitz, did not apply to be the class representative for the Sections 11 and 12(a)(2) claims.

Yet, plaintiffs have alleged but a single "corrective disclosure," which was allegedly made on July 6, 2004, at the end of the class period. See Consolidated Complaint ¶ 79; see also Memorandum and Order on Defendants' Motion to Dismiss 29, Aug. 11, 2005 ("Plaintiffs' allegations regarding loss causation center on a July 6, 2004 KVH press release.").

Under the Supreme Court's decision in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), a plaintiff suffers no legally cognizable damages if he sells stock allegedly inflated by fraud before the truth emerges. This Court noted as much in its ruling on the motion to dismiss: "a securities fraud plaintiff must allege that the value of the security declined as a result of the misrepresentation; an inflated purchase price does not, by itself, constitute loss causation." Memorandum and Order on Defendants' Motion to Dismiss 29, Aug. 11, 2005 (citing Dura, 544 U.S. at 344-45). The Dura Court explained:

> If ... the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss. If the purchaser sells later after the truth makes its way into the market place, an initially inflated purchase price might mean a later loss.

Dura, 544 U.S. at 342. Thus, under Dura, "an in-and-out investor -- i.e., an investor who purchased and then resold securities during the class period -- will have no recoverable damages if his sales occurred before the first corrective disclosure.... [I]n cases where there is only one corrective disclosure at the end of the class period, this rule effectively means that there are no recoverable in-and-out damages." Daniel P. Lefler & Allan W. Kleidon, Just How Much Damage Did Those Misrepresentations Actually Cause and to Whom?: Damages Measurement in "Fraud on the Market" Securities Class Actions, 1505 Practising Law Inst., Corp. Law & Prac. Course Handbook Series 285, 295 (2005); see also In re Compuware Sec. Litig., 386 F. Supp. 2d 913, 920 (E.D. Mich. 2005) (relying on Dura and granting summary judgment in favor of

defendant on Section 10(b) claim asserted by in-and-out trader, based on inability to demonstrate cognizable damages).

Directly on point is the recent case of In re CornerStone Propane Partners, L.P. Securities Litigation, No. 03-2522, 2006 WL 1180267 (N.D. Cal. May 3, 2006) (attached hereto at Ex. L), in which plaintiffs sought to certify a class of "all persons and entities who purchased or otherwise acquired" defendants' stock during the class period "and who were damaged thereby." Id. at *2. Defendants objected to the request for such a broad class on the grounds that it would include "in-and-out traders," who suffer no damages under Dura. The court, which has a mandate under Rule 23(c)(1)(B) to "define the class," overrode plaintiffs' objections that it was premature to delve into damages issues. According to the court:

> In the present action, defendants are correct in their assertion that plaintiffs who sold their stock before July 27, 2001, when the first corrective disclosure occurred, did not suffer any loss causally related to defendants' alleged misrepresentations. The court finds that these plaintiffs are excluded from the definition of the Class.

Id. at *9.

In the present case, plaintiffs' Consolidated Complaint alleges but a single corrective disclosure at the end of the class period. Plaintiffs cannot now seek to amend the complaint in reply to this opposition to allege otherwise. Under Dura, plaintiffs' Consolidated Complaint and this Court's obligation to "define the class," all in-and-out traders must be excluded from the class; the class can consist of no more than "all persons and entities who purchased the securities of KVH Industries, Inc. during the class period from October 1, 2003 through July 2, 2004, inclusive, and retained those shares until July 6, 2004."

## CONCLUSION

Plaintiffs have not carried their burden of passing a rigorous assessment of the class certification requirements. Plaintiffs' purported Section 10(b) representative, TAPP, knows so

little about the case and has demonstrated so little commitment to oversee the case that it is not an "adequate" representative as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' purported Sections 11 and 12(a)(2) representatives, the Brauns, similarly have demonstrated a lack of knowledge of and participation in the management of the case and are thus likewise inadequate pursuant to Fed. R. Civ. P. 23(a)(4). Further, the Brauns suffer a disabling "unique defense" that renders them atypical and unable to serve under Fed. R. Civ. P. 23(a)(3). Accordingly, no class may be certified. Finally, in the event this Court certifies a class over defendants' objections, such class cannot include any investors who sold their KVH stock prior to the July 6, 2004 "corrective disclosure," the only one alleged by plaintiffs.

Respectfully submitted,

May 15, 2006

Brooks R. Magratten (# 3585)
VETTER & WHITE
Attorneys for Defendants
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 [FAX]

OF COUNSEL:
Brandon F. White
Matthew C. Baltay
Kalun Lee
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 [FAX]

**CERTIFICATE OF SERVICE**

TO:

Matthew F. Medeiros, Esq.
Little Medeiros Kinder Bulman
& Whitney, PC
72 Pine Street
Providence, RI 02903

Barry J. Kusinitz, Esq.
155 South Main Street
Suite 405
Providence, RI 02903

David A. Rosenfeld, Esq.
Samuel H. Rudman, Esq.
Russell J. Gunyan, Esq.
Lerach Coughlin Stoia Geller
Rudman & Robbins, LLP
58 South Service Road, Suite 200
Melville, NY 11747

I hereby certify that I served on the above-named counsel a copy of the within Defendants' Objection to Motion For Class Certification by first class mail, postage prepaid, on the 15th day of May, 2006.