UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SEKUK GLOBAL ENTERPRISES, On Behalf of Itself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KVH INDUSTRIES, INC., MARTIN A. KITS VAN HEYNINGEN, and PATRICK J. SPRATT,<br><br>Defendants. | Civil Action No. CA-04-306L<br>**(Consolidated Action)**<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, APPROVING PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND CERTIFYING CLASS |

# TABLE OF CONTENTS

**Page**

I. STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS .......... 3

A. An Evaluation of Lead Plaintiff's Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement Supports Approval of the Settlement .......... 5

B. Consideration of the Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement .......... 9

C. Consideration of the Stage of the Proceedings Supports Approval of the Settlement .......... 10

D. In the Judgment of Experienced Trial Counsel the Settlement Is a Favorable Result .......... 11

E. The Settlement Is the Result of Arm's-Length Negotiations .......... 12

F. The Reaction of the Class Supports the Settlement .......... 13

G. The Settlement Is in the Public Interest .......... 14

II. THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE .......... 14

III. FINAL CLASS CERTIFICATION FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE .......... 16

A. The Class Is Sufficiently Numerous .......... 16

B. Common Questions of Law or Fact Exist .......... 17

C. Lead Plaintiff's Claims Are Typical of Those of the Class .......... 17

D. Lead Plaintiff Is an Adequate Class Representative .......... 18

E. The Proposed Class Satisfies Rule 23(b)(3) .......... 19

1. Common Questions of Law and Fact Predominate Over Individual Questions .......... 19

2. A Class Action Is Superior to Other Available Methods for Resolving This Controversy .......... 19

IV. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)....................16, 19, 20

*Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund*,
902 F.2d 185 (2d Cir. 1990)....................14

*Bano v. Union Carbide Corp.*,
273 F.3d 120 (2d Cir. 2001)....................14

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975)....................17

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999)....................4

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
177 F.R.D. 54 (D. Mass. 1997)....................4

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....................5

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976)....................6

*Galdi Sec. Corp. v. Propp*,
87 F.R.D. 6 (S.D.N.Y. 1979)....................13

*Geffon v. Micrion Corp.*,
249 F.3d 29 (1st Cir. 2001)....................6

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
212 F.R.D. 400 (E.D. Wisc. 2002)....................15

*Greenspun v. Bogan*,
492 F.2d 375 (1st Cir. 1974)....................4

*Hawkins v. Comm'r of the N.H. Dept. of Health & Human Servs.*,
No. Civ. 99-143-JD, 2004 WL 166722
(D.N.H. Jan. 23, 2004)....................4

*In re Cabletron Sys., Inc. Sec. Litig.*,
239 F.R.D. 30 (D.N.H. 2006)....................14

**Page**

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ....................................................................13

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003)...........................................................................3, 4

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) .............................................................9, 11

*In re GMC Pick-up Truck Fuel Tank Prods. Litig.*,
55 F.3d 768 (3d Cir. 1995).................................................................................14

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)................................................................ *passim*

*In re Lease Oil Antitrust Litig.*,
186 F.R.D. 403 (S.D. Tex. 1999)......................................................................16

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 369 (D.D.C. 2002)............................................................................9

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005)............................................................3, 4, 7, 16

*In re Microstrategy Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) ................................................................15

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
243 F.R.D. 17 (D. Me. 2007)...............................................................................7

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)................................................................ *passim*

*In re Stone & Webster, Inc., Sec. Litig.*,
414 F.3d 187 (1st Cir. 2005)................................................................................5

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................7

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)...............................................................14

*Krangel v. Golden Rule Res., Inc.*,
194 F.R.D. 501 (E.D. Pa. 2000)...........................................................9, 10, 14

**Page**

*McLaughlin v. Liberty Mut. Ins. Co.*,
224 F.R.D. 304 (D. Mass. 2004)....................17

*Payne v. Goodyear Tire & Rubber Co.*,
216 F.R.D. 21 (D. Mass. 2003)....................17, 18

*Rodrigues v. Members Mortgage Co.*,
226 F.R.D. 147 (D. Mass. 2005)....................17, 18

*Rolland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2000)....................4, 13

*Tardiff v. Knox County*,
365 F.3d 1 (1st Cir. 2004)....................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007)....................6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77k....................5
§771(a)(2)....................5
§77o....................5
§78j(b)....................5, 6

Federal Rules of Civil Procedure
Rule 23....................14, 16, 20
Rule 23(a)....................2, 16, 19, 20
Rule 23(a)(1)....................16
Rule 23(a)(2)....................17
Rule 23(a)(3)....................17
Rule 23(a)(4)....................18
Rule 23(b)....................16
Rule 23(b)(3)....................2, 19, 20
Rule 23(b)(3)(D)....................20
Rule 23(e)....................1, 3

17 C.F.R.
§240.10b-5....................5, 6, 17

## PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff respectfully submits this memorandum of law in support of its motion for final approval of the settlement of this litigation, approval of the Plan of Allocation of settlement proceeds and final certification of the Class in *Sekuk Global Enterprises v. KVH Industries, Inc., et al.* (the "Action").[1] The terms of the settlement (the "Settlement") are set forth in the Stipulation of Settlement dated as of July 26, 2007 (the "Stipulation"), which was previously submitted to the Court. As set forth in the Stipulation, Defendants[2] agreed to pay Five Million Dollars ($5,000,000) and to adopt, formalize or reconfirm adherence to various corporate governance reforms and enhancements, to settle Lead Plaintiff's claims. The cash portion of the Settlement has been deposited into an escrow account and is currently earning interest for the Class. Lead Plaintiff believes that the Settlement is an excellent result, in the best interests of the Class,[3] and merits the Court's approval.

Lead Plaintiff has carefully investigated and actively litigated this case since its commencement over three and one-half years ago.[4] The Settlement was reached after hard-fought efforts by counsel, including extensive factual investigation, despite the discovery stay mandated by

---

[1] The Memorandum of Points and Authorities in Support of Lead Plaintiff's Counsel's Application for an Award of Attorneys' Fees and Expenses, with supporting documents, is being filed herewith.

[2] Defendants are: KVH Industries, Inc. ("KVH" or the "Company"), Martin A. Kits Van Heyningen and Patrick J. Spratt.

[3] The Class is defined in §III, herein. This court certified the Class, for settlement purposes, in its Order Preliminarily Approving Settlement and Providing for Notice, dated September 7, 2007 ("Preliminary Approval Order").

[4] The accompanying Declaration of Samuel H. Rudman in Support of Motion for Order Granting Final Approval of Settlement, Approving Plan of Allocation of Settlement Proceeds and Application for Attorneys' Fees and Expenses ("Rudman Decl.") provides a detailed history of the litigation and the factors bearing on the reasonableness of the Settlement and Plan of Allocation, and the Court is respectfully referred thereto.

the Private Securities Litigation Reform Act of 1995 ("PSLRA"); drafting of a detailed amended complaint; full briefing and oral argument on Defendants' motion to dismiss and Lead Plaintiff's motion to strike certain exhibits from Defendants' motion; briefing and discovery on Lead Plaintiff's motion for class certification; full briefing on Defendants' motion to compel the identity of Lead Plaintiff's confidential witnesses; document discovery, including the production of more than 46,000 pages of non-public documents by KVH, KVH's auditors, and several of its largest customers; expert consultation and mediation before a retired federal judge. *See* Rudman Decl., ¶40.

Lead Plaintiff's and Lead Plaintiff's counsel's conclusion that the Settlement is an excellent result, and is in the best interests of the Class, is based on all the circumstances of this litigation. Lead Plaintiff and Defendants (collectively, the "Settling Parties") presented the terms of the Settlement and the proposed notice program to the Court on September 7, 2007, and the Court has granted it preliminary approval. Moreover, the plan of allocation ("Plan of Allocation") of the Settlement proceeds is fair, reasonable, and adequate, and should be approved. Class Members agree with this conclusion, as there have been no objections to the proposed Plan of Allocation. Finally, the Class meets all the requirements of Fed. R. Civ. P. 23(a) and (b)(3). Therefore, final certification should be granted.

Pursuant to the Court's Preliminary Approval Order, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") was mailed to 15,072 potential Class Members. *See* paragraphs 3-6 of the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Pendency and Proposed Settlement of Class Action, and the Proof of Claim and Release Form, and B) Publication of the Summary Notice ("Sylvester Decl."), submitted herewith. Both the terms of the Settlement and the Plan of Allocation are set forth in detail in the Notice. In addition, a summary notice (the "Summary Notice") was published in *Investor's Business Daily* on September 28, 2007, and the Stipulation and supporting exhibits were posted on the Court's website. The last day to opt-

out of the Class or to serve and file objections to the fairness of the Settlement or the Plan of Allocation was December 31, 2007. Not a single Class Member has opted-out of the Settlement and only one Class Member, who purchased 50 shares of KVH common stock during the Class Period, has filed an objection. The response of the Class Members, therefore, demonstrates overwhelming support for the Settlement.

## ARGUMENT

### I. STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure states in part:

> **(e) Settlement, Voluntary Dismissal, or Compromise**
>
> **(1)(A)** The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.
>
> > **(B)** The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.
> >
> > **(C)** The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

There is no single test in the First Circuit for determining the fairness, reasonableness, and adequacy of a proposed class action settlement. *See In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005)("[T]he First Circuit has not established a formal protocol for assessing the fairness of a settlement."); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003)("There is no single test in the First Circuit for determining fairness, reasonableness and adequacy of a proposed class action settlement."). Rather than applying "a single litmus test" in making the fairness determination, the Court should engage in a "studied review of a wide variety of factors bearing on the central question of whether the settlement is

reasonable in light of the uncertainty of litigation." *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999).

Courts in this Circuit have considered the following factors in evaluating the fairness of a class action settlement: 1) the potentially significant obstacles to recovery; 2) the complexity and likely duration of the litigation; 3) the stage of the proceedings at which the settlement was reached; 4) the amount of the settlement in light of the risks of litigation; 5) whether the settlement was reached after arm's-length negotiations and the opinion of qualified counsel; and 6) the reaction of the class to the proposed settlement. *See, e.g.*, *Hawkins v. Comm'r of the N.H. Dept. of Health & Human Servs.*, No. Civ. 99-143-JD, 2004 WL 166722, at *5 (D.N.H. Jan. 23, 2004); *Rolland v. Cellucci*, 191 F.R.D. 3, 8 (D. Mass. 2000).

Moreover, "[i]n evaluating the substantive fairness of a class action settlement, the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff[s] after full and successful litigation of the claim[s]." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997). As the First Circuit has observed

> any settlement is the result of a compromise – each party surrendering something in order to prevent unprofitable litigation, and the risks and costs inherent in taking litigation to completion. A district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial.

*Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974); *see also Compact Disc*, 216 F.R.D. at 211 ("As supervising judge, I am not to prejudge the merits of the case . . . and I am not to second-guess the settlement; I am only to determine if the parties' conclusion is reasonable."); *Lupron Mtkg.*, 228 F.R.D. at 97 (the court should not "hypothesize about larger amounts that might have been recovered").

Consideration of all these factors supports the conclusion that the Settlement of this Action is fair, adequate and reasonable.

### A. An Evaluation of Lead Plaintiff's Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement Supports Approval of the Settlement

Although Lead Plaintiff believes it has strong claims and would prevail at trial against Defendants, Lead Plaintiff faces formidable obstacles to recovery in this Action with respect to both liability and damages. The principal claims asserted in the litigation on behalf of the Class are based on §10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.[5] To prevail on their §10(b) and Rule 10b-5 claims, Lead Plaintiff would be required to prove: (1) a material misrepresentation (or omission); (2) made with scienter (*i.e.*, a wrongful state of mind); (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 193 (1st Cir. 2005) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).

Lead Plaintiff alleges that during the Class Period, Defendants made material misstatements concerning the anticipated introduction of a new product, the A5, a mobile satellite system for automobiles, as well as the initial sales success of the A5. Rudman Decl., ¶¶14-15. Lead Plaintiff alleges that Defendants acted with scienter when the Company issued false financial statements to create the misleading impression that KVH had successfully introduced the A5, and that the product was experiencing high demand during the Class Period. Lead Plaintiff further alleges that the Defendants' conduct artificially inflated the price of KVH securities during the Class Period, and as a result, Lead Plaintiff and other Class Members were damaged when they bought KVH securities.

---

[5] The Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws (the "Complaint") also asserted claims against all Defendants under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act") in connection with the public offering of KVH common stock in February 2004. In order to prevail on those claims, Lead Plaintiff must prove that the Registration Statement and Prospectus for that offering contained material misrepresentations or omissions.

Throughout this litigation, Defendants have adamantly denied liability and have asserted that they have absolute defenses to Lead Plaintiff's allegations. Among other things, Defendants claim: that the alleged misstatements were not made with scienter; that the Class did not suffer any "economic loss" as a result of the alleged misstatements or omissions regarding the A5; that the alleged misstatements were not material; and that the Complaint was not sufficiently particularized in that it failed to allege that the Individual Defendants were aware of, and directly participated, in the alleged improprieties.

Proving that the Defendants acted with scienter, at summary judgment or trial, would be a formidable challenge in this Action. To establish liability under §10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, which is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). *See also Geffon v. Micrion Corp.*, 249 F.3d 29, 36 (1st Cir. 2001) (First Circuit affirmed summary judgment motion for the defendants because "[e]ven if the statements at issue were material and false or misleading, the evidence does not support a finding that defendants ***knew*** the statements would materially mislead the investing public.") (emphasis in original).

Moreover, the Supreme Court recently clarified the "strong inference" pleading standard that is required in a private securities case, which also potentially increased the Lead Plaintiff's obstacles to recovery in this Action. In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007), the court held that an action alleging securities fraud will survive only if the inference of scienter is "more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." Lead Plaintiff believes that it had meritorious claims and,

ultimately, would have been successful at trial. But the Defendants' arguments (*e.g.*, as to scienter and loss causation) could have been persuasive to this Court at summary judgment or a jury at trial.

This Action also involves a number of complex factual issues, many of which require an understanding of Generally Accepted Accounting Principles ("GAAP") and the specifics of the A5, including its operating specifications. Assuming Lead Plaintiff survived Defendants' motions for summary judgment, presenting these complex issues to a jury would pose a risk to Lead Plaintiff's likelihood of success at trial. These risks demonstrate that the Settlement is reasonable under the circumstances. *See In re Lupron Mktg.*, 228 F.R.D. at 97 (approving class action settlement in light of "plaintiffs' principal risks" with respect to establishing liability, including the "formidable, albeit not insurmountable obstacles in presenting to a lay jury a clear, and yet legally sufficient, narrative of the evidence").

Lead Plaintiff would have to steer the jury through a maze of financial statements and internal memoranda and documents regarding the product at issue. Whether a jury would understand the intricacies of these issues well enough to reach a determination in Lead Plaintiff's favor, especially when faced with conflicting testimony and evidence, is far from certain. It is well-established that "[c]lass actions often present extraordinarily complex factual and legal scenarios." *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 243 F.R.D. 17, 18 (D. Me. 2007); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (Securities class actions are often "difficult and . . . uncertain.").

Moreover, there are many risks inherent in all shareholder litigation, including: the unpredictability of a lengthy and complex jury trial – raising a myriad of complex issues; the risk that witnesses could suddenly become unavailable; the risk that jurors could react to the evidence in unforeseen ways; and the risk that the jury would find that the Defendants reasonably believed in the appropriateness of their actions at the time and that Lead Plaintiff failed to prove that the Defendants

acted with the required scienter. Indeed, this was *not* a case involving significant insider trading, criminal indictments, or the resignation of its auditors because of the Company's misconduct, or even a restatement of previously-issued financial statements.

Lead Plaintiff also faces the risk that they will not be able to prove some or all of their damages, even if liability is established. There are two significant difficulties in regard to proving damages: (1) Defendants would argue that the decline in KVH's stock price may have been influenced by factors other than the Defendants' alleged fraud; and (2) Defendants would also argue that their alleged conduct may not have been the only factor influencing KVH's stock price during the Class Period. *See, e.g.*, *Dura Pharms.*, 544 U.S. at 346; *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 182-83 (E.D. Pa. 2000). In fact, Defendants argued quite forcefully that KVH's stock price drop at the end of the Class Period was not at all related to a decline in sales of the A5; it was related only to declining revenues in "land mobile satellites" to "RV customers." Rudman Decl., ¶22.

The determination of damages, like the determination of liability, is a complicated and uncertain process, involving conflicting expert opinions. The reaction of a jury to complex expert testimony is highly unpredictable. The jury may reject assumptions underlying the expert testimony regarding damages as speculative or unreliable. Conceivably, a jury could find that there are no damages or that damages are only a fraction of the amount that Lead Plaintiff contends. *Ikon*, 194 F.R.D. at 182-83.

The Settlement provides an immediate benefit to the Class Members that, when balanced against the potential costs and risks associated with continued litigation of this case, supports a finding that the Settlement is fair, reasonable and adequate. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 74 (D. Mass. 2005) (Court approved the settlement of a class action, stating that the "'settlement represents a necessary compromise between inherent risks of doing so and a guaranteed

cash recovery.'") (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 394 (D.D.C. 2002)). *See also Krangel v. Golden Rule Res., Inc.*, 194 F.R.D. 501, 508 (E.D. Pa. 2000) ("Consideration of the risks faced by plaintiffs in establishing liability and damages weighs in favor of settlement, which eliminates all such risks."). Specifically, the Class will receive $5,000,000, less fees and expenses, and those Class Members who have not sold their KVH stock will benefit from the corporate governance reforms which focus on enhancing the Company's accounting and financial controls relating to revenue recognition and external reporting practices. In addition, KVH will maintain a confidential "hotline" for receiving, retaining, and treating employee complaints associated with accounting and internal auditing practices and illegal behavior. These are significant benefits.

**B. Consideration of the Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement**

"Securities cases are always complicated, and the extensive and time consuming discovery of this case indicate that this action is no exception." *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 429 (E.D. Pa. 2001). If not for this Settlement, the Settling Parties would continue to vigorously litigate this Action. Defendants have demonstrated a commitment to defend the case through and beyond trial, if necessary, and are represented by well-respected and capable counsel. Indeed, this Action went on for over three years before a settlement was reached, and it could easily continue for years pending trial and appeals.

Although much progress had been made in litigating this Action, there was much work left to be done. Additional documents would have needed to be produced, witness and expert depositions would have to be taken, summary judgment motions would have to be briefed and argued, *Daubert* motions would need to be litigated, a pre-trial order would have to be prepared, proposed jury instructions would have to be submitted and motions *in limine* would have to be filed and argued. Further, massive amounts of time would be expended by the parties in preparing this case for a

lengthy and complicated trial. A trial in this complex case involving an assortment of accounting and auditing principles would be no simple task.

KVH's financial statements are at issue in this complex case involving an assortment of accounting and auditing principles. A trial on all these issues would be no simple task. The court in *Ikon* found that:

> Many of the allegations relate to defendants' accounting decisions, and extensive expert testimony would certainly be required on the nature of the accounting practices, the significance of various decisions in relation to GAAP, and the effect that those practices ultimately had on stock prices and the plaintiffs' finances. The difficulty of presenting these issues either in the context of a motion for summary judgment or at trial thus weighs in favor of settlement, particularly when considered in conjunction with the corresponding financial outlays by both sides.

194 F.R.D. at 179

Moreover, whatever the outcome of trial, appeals could be taken to the Court of Appeals for the First Circuit. All of the foregoing factors would extend the case and delay the ability of the Class to recover for years, assuming, at the end of that road, there was anything left to recover. In *Krangel*, the Court observed that:

> The costs of trying this matter would substantially burden any recovery obtained for the class, particularly in light of defendants' economic difficulties. Thus, if this case were to be litigated to its conclusion rather than settled, resolution would be complex, time consuming, and expensive. Consideration of this factor weighs in favor of settlement.

194 F.R.D. at 507. Settlement at this point in the litigation results in significant and tangible present recovery, without the necessary risk, expense, and delay of trial and post-trial litigation.

### C. Consideration of the Stage of the Proceedings Supports Approval of the Settlement

Lead Plaintiff's counsel prepared extensive briefs and other papers relating to the Action. In addition to drafting an initial complaint and a factually detailed amended complaint, Lead Plaintiff briefed oppositions to Defendants' motion to dismiss the Complaint, briefed its class certification motion, opposed Defendants' motion to compel identification of the confidential witnesses, and

started document discovery. "Counsel have invested sufficient time and attention to the merits of the case to have a reasoned opinion of its settlement value as well as whether settlement is even the prudent course of action." *Ikon*, 194 F.R.D. at 180.

During the PSLRA-mandated discovery stay, prior to the ruling on Defendants' motion to dismiss, Lead Plaintiff's counsel conducted a thorough review of KVH's SEC filings, press releases, and other public statements, as well as a review of analysts' reports and other publicly-available information relating to KVH. Lead Plaintiff's counsel also identified, located and interviewed a number of confidential witnesses, including former KVH employees. Finally, Lead Plaintiff consulted with several experts, including an accounting expert, a damages expert to analyze loss causation issues, and a private investigative firm to assist in reviewing, analyzing and developing all the critical facts necessary to state viable claims under the federal securities laws related to KVH's alleged misconduct.

### D. In the Judgment of Experienced Trial Counsel the Settlement Is a Favorable Result

Experienced and highly capable counsel for Lead Plaintiff, after extensive arm's-length negotiations, have weighed all of the relevant factors and concluded that the Settlement is a favorable result that is in the best interests of the Class. Given all the issues, the Settlement reached is a testament to the skill and tenacity of Lead Plaintiff's counsel. Their view, although not conclusive, is entitled to significant weight. *See Gen. Instrument*, 209 F. Supp. 2d at 429.

In light of all of the factors discussed above, this Settlement is clearly in the best interests of Class Members:

> Considering the present value of the money, the probability of lengthy litigation in the absence of a settlement, the high risks that the plaintiffs would not have been able to succeed on liability, at least not for the entire period, and the likelihood the damages received would have been much lower than those demanded by plaintiffs, the settlement is a reasonable percentage of the total likely recovery at trial. Additional factors lending support to this conclusion are the non-monetizable

> value of the settlement's provision for cooperation between [the defendant] and the plaintiffs against the non-settling defendant. . . .

*Ikon*, 194 F.R.D. at 184. Those same considerations apply here.

**E. The Settlement Is the Result of Arm's-Length Negotiations**

This Settlement was reached after intensive, arm's-length negotiations, under the auspices of a former federal district judge. At the mediation, each side presented its best evidence and the perceived strength of their respective case, and the estimated amount of damages suffered by the Class. The opposing views were also presented. After the parties agreed on the monetary component of the Settlement, they spent several months negotiating the corporate governance portion. Rudman Decl., ¶31. Under these circumstances, there is no suggestion of any collusion or illegality. "[T]he hallmarks of a questionable settlement are not present: plaintiffs receive a significant monetary settlement as well as the non-tangible benefit of cooperation, and there is no suggestion of collusion between the defendants and plaintiffs' counsel." *Ikon*, 194 F.R.D. at 184.

Lead Plaintiff believes that the Settlement is a very good result under the circumstances. Lead Plaintiff has clearly demonstrated that the settlement negotiations in this case were extensive and undertaken at arm's length by counsel on both sides, who each have substantial experience and expertise in representing parties in securities class actions. Throughout the settlement negotiations, the parties employed their own teams of attorneys, consultants, and experts to assess the validity of Lead Plaintiff's allegations and Defendants' defenses.

The negotiation produced a settlement agreement that is fair to all Class Members and does not unjustly benefit any Class Member. The Plan of Allocation was developed by Lead Plaintiff's counsel, with the assistance of a highly qualified consultant, to provide that the Settlement Fund will be distributed on a pro rata basis, based on a formula that takes liability and potential damages into account for the various period of time.

Because the Settlement resulted from arm's-length negotiations and the final agreement suggests no bias, collusion or coercion in favor of any party or sub-group of class members, this factor weights in favor of settlement approval. "The proponents of a class settlement can obtain 'a strong initial presumption that the compromise is fair and reasonable' by establishing that the settlement was reached after arms-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectors or their relative interest is small." *Rolland*, 191 F.R.D. at 6 (quoting *Galdi Sec. Corp. v. Propp*, 87 F.R.D. 6, 9 (S.D.N.Y. 1979)).

**F. The Reaction of the Class Supports the Settlement**

Notices of the Settlement were sent to 15,072 potential Class Members, and the Summary Notice was published in *Investor's Business Daily* on September 28, 2007, and posted on the Court's website. Sylvester Decl., ¶8. The time period for objecting to the Settlement expired on December 31, 2007. As noted above, there was only one objection made, and no requests for exclusion from the Class. The objection complains that the Settlement provides a small recovery, but fails to acknowledge the very real possibility, given the facts present here, that no additional recovery would be obtained following continued litigation.

"That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class', as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citation omitted).

> To date, and despite having been afforded a full opportunity to do so, no class member has objected to the terms of the Settlement. Courts have deemed the attitude of class members toward the settlement of a class action, as evidenced by the absence of objections, as constituting an indication that the settlement is fair and reasonable. The absence of any objections argues in favor of approval of the settlement.

*Krangel*, 194 F.R.D. at 507 (quotations and citation omitted). *See In re Cabletron Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D.N.H. 2006) (court approved class action settlement after no objections and three opt-outs).

**G. The Settlement Is in the Public Interest**

This litigation has been occupying judicial resources for over three years, and there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources. *See Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001) ("[t]he public interest in amicable resolution of cases is particularly strong" in class action litigation); *Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund*, 902 F.2d 185, 190 (2d Cir. 1990) ("Courts are wary of disturbing settlements, because they represent compromise and conservation of judicial resources, two concepts highly regarded in American jurisprudence."); *In re GMC Pick-up Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (The law favors settlement, particularly in class actions and other complex cases, to conserve judicial resources and reduce parties' costs.).

Settlement approval will free up judicial resources and provide a tangible recovery to the Class Members, who have been awaiting the outcome of this litigation for over three years. Moreover, the Settlement allows KVH, a vital local institution, and its officers and directors, to resume business unencumbered by this time-consuming and complex litigation. For all of the reasons discussed here and above, the Settlement clearly is in the public interest.

## II. THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

Lead Plaintiff also seeks approval of the Plan of Allocation of the Settlement proceeds. Evaluation of a plan of allocation of settlement proceeds in a class action under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable and adequate. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y.

2005). In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y.) ("[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Here, the Plan of Allocation was developed by Lead Plaintiff's counsel together with its damage consultant. The Plan of Allocation reflects an assessment of the market losses of the Class and an assessment of the individual Class Members' market losses, based on: 1) when they bought KVH securities; and 2) whether they held their KVH stock or sold it during the Class Period. In addition, the Plan of Allocation considers the relative strength of individual Class Members' claims. The Plan of Allocation will result in a fair distribution of the available proceeds among those Class Members who submit a valid claim. *See In re Microstrategy Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001); *Ikon*, 194 F.R.D. at 184.

Detailed explanations of the loss calculations are provided in the Notice. Therefore, the Notice clearly sets forth the Plan of Allocation for Class Members, with a clear explanation of the rationale used to calculate each Class Member's portion of the Settlement Fund.

> In sum, the plan of allocation, as a general matter, fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. As such, the plan fairly and rationally allocates the settlement consideration among class members and accordingly should be approved as fair and reasonable.

*Microstrategy*, 148 F. Supp. 2d at 669 (citation omitted). *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wisc. 2002) (approving plan of allocation providing that class members submitting proof of claim forms evidencing a loss in securities transactions were entitled to recovery).

## III. FINAL CLASS CERTIFICATION FOR PURPOSES OF THE PROPOSED SETTLEMENT IS APPROPRIATE

The Court's Preliminary Approval Order certified the Class, for purposes of effectuating the Settlement only, as "all Persons who purchased KVH Industries, Inc. securities during the period between October 1, 2003 and July 2, 2004, inclusive." Final certification of the Class should now be entered for purposes of settlement.

If all of Rule 23's requirements are met, a class may be certified for purposes of a settlement. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997); *Relafen*, 231 F.R.D. at 68. "[A] district court must first find that a class satisfies the requirements of Rule 23, regardless of whether it is certifying the class for trial or for settlement." *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 418 (S.D. Tex. 1999); *see also Amchem*, 521 U.S. at 621 ("The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments – checks shorn of utility – in the settlement class context."). However, "the district court may take the proposed settlement into consideration when examining the question of certification. *Amchem*, [521 U.S. 620-21]. . . . [Additionally], 'a district court [determining whether to certify a class for settlement purposes only] need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.'" *Lease Oil*, 186 F.R.D. at 418 (quoting *Amchem*, 521 U.S. at 620). Moreover, "the law favors class action settlements." *Lupron*, 228 F.R.D. at 88.

In order to be certified, a class must satisfy the four requirements of Rule 23(a), and fit with one of the categories of class actions set forth in Rule 23(b). *Tardiff v. Knox County*, 365 F.3d 1, 4 (1st Cir. 2004). The Class here easily satisfies all of Rule 23's requirements and should be certified.

### A. The Class Is Sufficiently Numerous

For a class action to be appropriate, the proposed class must be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). There is no fixed number of class members which either compels or precludes the certification; indeed, classes consisting of 40

members generally are sufficient to establish numerosity. *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D. Mass. 2004). Here, as the Sylvester Declaration sets forth, over 15,000 individual Notices were sent to Class Members throughout the country. Moreover, over 15 million shares of KVH common stock were outstanding during the Class Period. Therefore, the threshold for a presumption of impracticability of joinder is thus easily exceeded.

**B. Common Questions of Law or Fact Exist**

The commonality requirement of Rule 23(a)(2) is satisfied when common questions of law or fact are present. *See Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003). It is not necessary that all issues of fact and law be common. *Relafen*, 231 F.R.D. at 69. Here, the Complaint spells out a "common course of conduct," the hallmark of Rule 10b-5 securities class actions. *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). The fraudulent scheme alleged here is similar to that found in *Blackie*, where the Ninth Circuit held:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Id.* at 902. Thus, class certification is proper when, as here, a class of stock purchasers is defrauded over a period of time by similar misrepresentations due to defendants' common course of conduct. *See id.* at 904-05. In this case, Lead Plaintiff alleged that material misrepresentations and omissions were contained in (or omitted from) Defendants' public statements, thereby similarly deceiving each purchaser of KVH securities during the Class Period. Rule 23(a)(2) is therefore satisfied.

**C. Lead Plaintiff's Claims Are Typical of Those of the Class**

The Lead Plaintiff's claims are typical of Class Members' claims. Under Rule 23(a)(3), claims are typical where the "'named plaintiffs' claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.'" *Rodrigues v. Members Mortgage Co.*, 226

F.R.D. 147, 151 (D. Mass. 2005) (citation omitted). Typicality requires "the same essential characteristics" among claims. *Payne*, 216 F.R.D. at 26. "For purposes of demonstrating typicality, '[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Relafen*, 231 F.R.D. at 69 (citation omitted).

In this case, the typicality requirement is met. There is no conflict or antagonism here between the Lead Plaintiff's interests and those of the Members of the Class because the claims of all Class Members derive from the same legal theories and allege the same set of operative facts. Like all of the Class Members, Lead Plaintiff purchased its KVH securities at prices artificially inflated by Defendants' materially false and misleading statements or omissions, without knowledge of material facts Defendants either knew or concealed. Therefore, all Class Members were victims of the same course of alleged conduct.

**D. Lead Plaintiff Is an Adequate Class Representative**

Under Rule 23(a)(4), plaintiffs must also "fairly and adequately protect the interests of the class." Adequacy "'requires that Plaintiff demonstrate that [his] interests will not conflict with those of class members and that [his] counsel is qualified, experienced and able to vigorously conduct the proposed litigation.'" *Rodrigues*, 226 F.R.D. at 151 (citation omitted). Only a conflict that goes to the very subject matter of the litigation will defeat a finding of adequacy. No such conflict exists here. Moreover, "'[i]n complex actions such as this one, named plaintiffs are not required to have expert knowledge of all details in the case, . . . and a great deal of reliance on the expertise of counsel is to be expected.'" *Relafen*, 231 F.R.D. at 69 (citation omitted).

The adequacy test is met here. The Lead Plaintiff's interests are co-extensive, do not conflict with the Class Members' interests, and are typical of the claims of the Class. Substantial common questions of fact and law exist and the Lead Plaintiff's interests are aligned with those of the Class.

The Lead Plaintiff has retained experienced counsel to prosecute this case, and has participated in all aspects of the litigation. Lead Plaintiff's counsel possess extensive experience in the area of securities litigation and have successfully prosecuted scores of securities fraud class actions across the country. *See* declarations of Lead Plaintiff's counsel, submitted herewith.

**E. The Proposed Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3) authorizes certification where, in addition to the prerequisites of Rule 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication. *Amchem*, 521 U.S. at 591-94. This case easily meets Rule 23(b)(3)'s requirements.

**1. Common Questions of Law and Fact Predominate Over Individual Questions**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. As discussed above, there are a host of common questions of law and fact as to the Members of the Class which Lead Plaintiff seeks to represent. These questions clearly predominate over individual questions because Defendants' alleged conduct affected all Class Members in the same manner – by artificially inflating the price of KVH stock. "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625. The First Circuit does not require an "entire universe" of common issues, but does require a "'sufficient constellation'" of them. *Relafen*, 231 F.R.D. at 70 (citation omitted). As described above, this requirement is clearly met.

**2. A Class Action Is Superior to Other Available Methods for Resolving This Controversy**

The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself. The requirement of superiority "ensures that resolution by class action will 'achieve economics of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results.'" *Relafen*, 291 F.R.D. at 70 (citing *Amchem*, 521 U.S. at 615). As further explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for proposal is that there be no trial." 521 U.S. at 620. Any management problems that may have existed here are eliminated by the Settlement. Therefore, because each of the other elements of Rule 23 are satisfied, a class action is the superior method of adjudicating the relatively small claims of Class Members.

## IV. CONCLUSION

This Settlement is an excellent result, given the presence of skilled counsel for the Settling Parties, the very real risks of little or no recovery at all if the litigation continues, and the present benefit of the Settlement to all Class Members. Moreover, the Plan of Allocation of the Settlement proceeds adequately compensates Class Members based on the relative strengths of their claims and market losses. Finally, the Class meets all of the requirements of Rules 23(a) and 23(b)(3). Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, approve Lead Plaintiff's proposed Plan of Allocation and certify the Class.

DATED: January 11, 2008

Respectfully submitted,

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
ELLEN GUSIKOFF STEWART

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
RUSSELL J. GUNYAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Lead Counsel for Plaintiffs

BARRY J. KUSINITZ (No. 1404)
155 South Main, Street, Suite 405
Providence, Rhode Island 02903
Telephone: 401/831-4200
401/831-7053 (fax)

Liaison Counsel

S:\Settlement\KVH.set\BRF FINAL APPROVAL 00048238.doc

CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 11, 2008.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:elleng@csgrr.com

# Mailing Information for a Case 1:04-cv-00306-ML-DLM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Russell J. Gunyan**
  rgunyan@csgrr.com,e_file_ny@csgrr.com
- **Barry J. Kusinitz**
  bkusinitz@bdglawyers.com
- **Brooks R. Magratten**
  bmagratten@vetterandwhite.com
- **Matthew F. Medeiros**
  mfm@lmkbw.com,dcabral@lmkbw.com
- **Samuel H. Rudman**
  srudman@csgrr.com
- **Ellen Gusikoff Stewart**
  elleng@csgrr.com
- **Benjamin V. White , III**
  bwhite@vetterandwhite.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Matthew C. Baltay**
Foley Hoag, LLP
155 Seaport Blvd.
Boston, MA 02210

**David A. Rosenfeld**
Lerach Coughlin Stoia Geller Rudman & Robbins
200 Broadhollow Road
Suite 406
Melville, NY 11747

**Brandon F. White**
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

Manual Service List
*Sekuk Global Enterprises v. KVH Industries, et al.*
Case No. 1:04-cv-00306-ML-DLM

Curtis V. Trinko
Law Offices of Curtis V. Trinko LLP
16 West 46th Street, Seventh Floor
New York, NY 10036
212/490-9550
212/986-0158 (Fax)

Jeffery K. Thornell
Sandra C. Thornell
Objectors
P.O. Box 780022
San Antonio, TX 78278
210/854-7744