UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SEKUK GLOBAL ENTERPRISES, On Behalf of Itself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KVH INDUSTRIES, INC., MARTIN A. KITS VAN HEYNINGEN, and PATRICK J. SPRATT,<br><br>Defendants. | Civil Action No. CA-04-306L<br>**(Consolidated Action)**<br><br>CLASS ACTION<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................................................................................................1

II. THE REQUESTED FEE AND EXPENSE AWARD IS FAIR AND REASONABLE ....................................................................................................5

A. The Common Fund Doctrine ....................................................................................................5

B. The First Circuit Has Expressed a Preference for the Percentage of Fund Method in Awarding Fees in Common Fund Cases ....................................................................................................6

C. The Requested Twenty-Five Percent Fee Award Is Well Within the Applicable Range of Percentage of Fund Awards ....................................................................................................9

D. The Relevant Factors Support Lead Plaintiff's Counsel's Fee Request ................10

1. The Amount of the Recovery ....................................................................................................10

2. The Skill and Efficiency of Counsel ....................................................................................................11

3. The Complexity of the Litigation and the Significant Obstacles to Recovery ....................................................................................................12

4. The Risk of Non-Payment ....................................................................................................13

5. Public Policy Favors the Requested Fee ....................................................................................................14

E. The Reaction of the Class Favors the Requested Fee ....................................................................................................15

F. The Fee Request Is Also Fully Justified Under the Lodestar/Multiplier Approach ....................................................................................................15

G. The Expenses Incurred by Lead Plaintiff's Counsel Were Reasonable ................17

III. PLAINTIFF IRVING BRAUN IS ENTITLED TO AN AWARD PURSUANT TO 15 U.S.C. §77z-1(a)(4) ....................................................................................................17

IV. CONCLUSION ....................................................................................................18

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Adams v. Standard Knitting Mills, Inc.*,
No. 8052, 1978 U.S. Dist. LEXIS 20317
(E.D. Tenn. Jan. 6, 1978) .......... 10

*Baron v. Commercial & Indus. Bank of Memphis*,
[1979-1980 Transfer Binder] Fed. Sec. L. Rep.
(CCH) ¶97,132 (S.D.N.Y. Oct. 3, 1979) .......... 10

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) .......... 5

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
480 F. Supp. 1195 (S.D.N.Y. 1979),
*aff'd*, 622 F.2d 1106 (2d Cir. 1980) .......... 10

*Blum v. Stenson*,
465 U.S. 886 (1984) .......... 6, 9

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 5

*Camden I Condo. Ass'n v. Dunkle*,
946 F.2d 768 (11th Cir. 1991) .......... 7

*Chalverus v. Pegasystems, Inc.*,
No. 97-12570-WGY (D. Mass. Dec. 19, 2000) .......... 9

*City Nat'l Bank v. Am. Commonwealth Fin. Corp.*,
657 F. Supp. 817 (W.D.N.C. 1987) .......... 10

*Conley v. Sears, Roebuck & Co.*,
222 B.R. 181 (D. Mass. 1998) .......... 16

*Cosgrove v. Sullivan*,
759 F. Supp. 166 (S.D.N.Y. 1991) .......... 16

*Deckler v. Ionics, Inc., et al.*,
No. 03-CV-10393-WGY (D. Mass. Apr. 4, 2005) .......... 9

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .......... 11

*Edmonds v. United States*,
658 F. Supp. 1126 (D.S.C. 1987) .......... 11

**Page**

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976)....................13

*Ezra Charitable Trust v. Tyco Int'l, Ltd.*,
466 F.3d 1 (1st Cir. 2006)....................13

*Florin v. NationsBank, N.A.*,
34 F.3d 560 (7th Cir. 1994)....................15

*Furtado v. Bishop*,
635 F.2d 915 (1st Cir. 1980)....................9

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000)....................11

*In re Ampicillin Antitrust Litig.*,
526 F. Supp. 494 (D.D.C. 1981)....................10

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002)....................14

*In re Aspen Tech., Inc. Sec. Litig.*,
No. 04-cv-12375-RCL (D. Mass. Mar. 6, 2006)....................9

*In re Bay Fin. Corp. Sec. Litig.*,
No. 89-2377-WD (D. Mass. Nov. 4, 1996)....................10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................1, 8

*In re Charter Commc'ns, Inc., Sec. Litig.*,
No. 1506, 2005 U.S. Dist. LEXIS 14772
(E.D. Mo. June 30, 2005)....................12

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992)....................15, 16, 17

*In re Copley Pharm., Inc. Sec. Litig.*,
No. 94-11897-WGY (D. Mass. Feb. 8, 1996)....................9

*In re Corel Corp. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003)....................12

*In re Crazy Eddie Sec. Litig.*,
824 F. Supp. 320 (E.D.N.Y. 1993)....................10

**Page**

*In re Employee Benefit Plans Sec. Litig.*,
No. 3-92-708, 1993 U.S. Dist. LEXIS 21226
(D. Minn. June 2, 1993)....................10

*In re Fidelity/Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999)....................17

*In re First BanCorp Sec. Litig.*,
No. 3:05-cv-021418-GAG (D.P.R. Nov. 28, 2007)....................9

*In re Franklin Nat'l Bank Sec. Litig.*,
[1980 Transfer Binder]
Fed. Sec. L. Rep. (CCH) ¶97,571
(E.D.N.Y. June 24, 1980)....................10

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004)....................1, 8

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
02-ML-1475-DT (RCX), 2005 U.S. Dist. LEXIS 13627
(C.D. Cal. June 10, 2005)....................11

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)....................12

*In re M.D.C. Holdings Sec. Litig.*,
No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
(S.D. Cal. Aug. 30, 1990)....................14

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998)....................16

*In re Picturetel Corp. Sec. Litig.*,
No. 97-12135-DPW (D. Mass. Nov. 4, 1999)....................9

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005)....................6, 9, 10, 15

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001)....................16

*In re Segue Software, Inc.*,
No. 99-10891-RGS (D. Mass. July 31, 2001)....................9

**Page**

*In re Sequoia Sys. Sec. Litig.*,
[1993-1994 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶98,089
(D. Mass. Sept. 10, 1993) ....................8, 15, 17

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ....................12

*In re Xcel Energy, Inc.*,
364 F. Supp. 2d 980 (D. Minn. 2005)....................14

*In re Zoll Med. Corp. Sec. Litig.*,
No. 94-11579-NG (D. Mass. Oct. 5, 1998) ....................9

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964)....................5

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................14

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) ....................5

*McKenzie Constr., Inc. v. Maynard*,
758 F.2d 97 (3d Cir. 1985)....................14

*Missouri v. Jenkins*,
491 U.S. 274 (1989)....................9, 15

*Morton v. Kurzweil Applied Intelligence, Inc.*,
No. 10829-REK (D. Mass. Feb. 4, 1998) ....................9

*Nilsen v. York County*,
400 F. Supp. 2d 266 (D. Me. 2005) ....................6

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992)....................5, 15

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993)....................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
___ U.S. ___, 127 S. Ct. 2499 (2007)....................5, 11

*Trustees v. Greenough*,
105 U.S. 527 (1882)....................5

**Page**

*Weiss v. Mercedes-Benz of N. Am.*,
899 F. Supp. 1297 (D.N.J. 1995) ........................................................................16

*Wilensky v. Digital Equip. Corp.*,
No. 94-10752-JLT (D. Mass. July 11, 2001) .........................................................9

*Zeid v. Open Env't Corp*.,
No. 96-12466-EFH (D. Mass. June 24, 1999) .......................................................9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77z-1(a)(4) ..........................................................................................................17
§78u-4(a)(6) ..........................................................................................................8

Federal Rule of Civil Procedure
Rule 1 ...................................................................................................................14

**SECONDARY AUTHORITIES**

Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation* (1994)...........................................................................6

Third Circuit Task Force, *Court Awarded Attorney Fees*
108 F.R.D. 237 (1985) ...........................................................................................7

## I. INTRODUCTION

Lead Plaintiff's counsel respectfully submit this memorandum in support of their application for an award of attorneys' fees in the amount of 25% of the Settlement Fund plus litigation expenses of $168,924.76, plus interest on both amounts. Petitioners are Coughlin Stoia Geller Rudman & Robbins LLP ("Lead Counsel"), Barry J. Kusinitz and the Law Offices of Curtis V. Trinko, LLP (collectively, "Lead Plaintiff's counsel"). Through their efforts, Lead Plaintiff's counsel have obtained an outstanding recovery for the Class of $5,000,000 (plus interest) in cash, plus the agreement by KVH Industries, Inc. ("KVH" or the "Company") to adopt, formalize or reconfirm adherence to various corporate governance reforms and enhancements designed to improve the manner in which KVH is operated, in a settlement (the "Settlement") embodied in the Stipulation of Settlement dated as of July 26, 2007 (the "Stipulation"). This application is fully supported by the Court-appointed Lead Plaintiff and is therefore presumed reasonable, and is consistent with recent fee awards in comparable settlements. In light of the risks undertaken, the work performed and the result obtained, these fees and expenses are reasonable and should be approved by the Court.[1]

In accordance with the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") entered by this Court on September 7, 2007, a total of 15,072 copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release form ("Proof of Claim") have been mailed by first-class mail to potential Class Members, brokers, banks and other nominees. *See* paragraphs 3-6 of the Declaration of Carole K.

---

[1] As discussed herein, the amounts requested are fair and reasonable. As several courts have held, "courts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) ("[I]n class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable.").

Sylvester Re A) Mailing of the Notice of Pendency and Proposed Settlement of Class Action, and the Proof of Claim and Release Form, and B) Publication of the Summary Notice, submitted herewith. The Notice and Proof of Claim were also posted on the Claims Administrator's website.[2] The Notice advised Class Members that Lead Plaintiff's counsel would apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund and expenses not to exceed $180,000.00. The Notice further provided all Class Members with the opportunity to be heard, to opt out of the Class, or to object to the Settlement. As of the filing of this application, the objection deadline has passed, and only one objection to the fee and expense request has been received. *See* Notice of Objection, submitted herewith. That objection mistakenly states that Lead Plaintiff's counsel is receiving $5 million in fees and expenses. That is clearly incorrect. Therefore, the objection should be overruled. In light of the extensive Court-approved notice program, a single and misinformed objection to the fee and expense application should not affect the Court's conclusion that the requested fee is fair and reasonable.

Given the significant risk of succeeding at trial or on any subsequent appeals, the vigorous defense to Lead Plaintiff's claims mounted by Defendants, especially with respect to scienter and loss causation, and the difficulties, generally, in proving liability and damages in a complex securities fraud action, it is respectfully submitted that the recovery of $5,000,000, plus interest, and the adoption by KVH of corporate governance reforms and enhancements, for the benefit of the Class (and all current KVH shareholders) in this action is an excellent result under the circumstances and justifies the request for an award of attorneys' fees and expenses in this action. The fee award is also justified by the fact that Lead Plaintiff's counsel have prosecuted this action vigorously against

---

[2] In addition, a summary notice was published on September 28, 2007, in the national edition of *Investor's Business Daily* as directed in the Preliminary Approval Order, and the Stipulation and supporting exhibits were also were posted on the Court's website.

Defendants solely on a contingent fee basis and without any compensation for the time and disbursements expended on the case.

As described more fully in the Declaration of Samuel H. Rudman in Support of Motion for Order Granting Final Approval of Settlement, Approving Plan of Allocation of Settlement Proceeds and Application for Attorneys' Fees and Expenses ("Rudman Decl."), by any measure, the Settlement obtained in this case is an outstanding result for Class Members, and justifies the requested fee. In order to avoid repetition, petitioners incorporate that detailed discussion herein.

During the course of this litigation, Lead Plaintiff's counsel:

1. Conducted a preliminary investigation on behalf of Lead Plaintiff and other KVH shareholders to determine whether there was a cause of action against KVH and certain of its officers and directors;

2. Prepared and filed the initial complaint;

3. Communicated with Members of the Class concerning the initiation and prosecution of the litigation;

4. In preparation for filing an amended complaint, Lead Plaintiff's counsel conducted further investigation, including the identification, location and interview of witnesses (consisting primarily of former KVH employees), in addition to examining publicly available records such as KVH's public statements and filings with the Securities and Exchange Commission, news stories and analysts' reports;

5. With the help of in-house forensic accountants, drafted and filed the highly detailed Consolidated Amended Class Action Complaint for Violation of Federal Securities Laws (the "Complaint"), which was filed on November 19, 2004;

6. Researched and drafted an extensive and complex opposition to Defendants' motion to dismiss the Complaint, which motion was largely denied;

7. Successfully briefed Plaintiffs' motion to strike certain exhibits submitted by Defendants in support of their motion to dismiss;

8. Drafted a motion for class certification, responded to Defendants' discovery on behalf of Lead Plaintiff and Plaintiffs Judith and Irving Braun, defended class representative depositions and replied to Defendants' opposition to their motion;

9. Drafted and served Defendants with document requests and served subpoena *duces tecum* on KVH's auditors and customers;

10. Reviewed and analyzed tens of thousands of documents produced by Defendants, KVH's auditors and several of the Company's largest customers;

11. Consulted with causation and damage experts;

12. Prepared for and participated in a settlement mediation before the Honorable Layn R. Phillips (Ret.);

13. Negotiated the corporate governance terms of the Settlement; and

14. Negotiated the terms of the Settlement papers presented to the Court.

This excellent result would not have been possible without the tenacious and skillful efforts of Lead Plaintiff's counsel. Despite the formidable opposition presented by Defendants and the discovery stay mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA") pending resolution of Defendants' motion to dismiss the Complaint, Lead Plaintiff's counsel sufficiently developed this case and pressed Defendants into a substantial settlement. Lead Plaintiff's Counsel's skill and diligence in prosecuting this case, coupled with their willingness to take this case to trial and risk their significant investment in time and expenses, merit the requested fee. Similar (if not higher) percentages have regularly been awarded in cases throughout this Circuit and elsewhere.

## II. THE REQUESTED FEE AND EXPENSE AWARD IS FAIR AND REASONABLE

### A. The Common Fund Doctrine

For over a century, the Supreme Court has recognized the "common fund" exception to the general rule that a litigant bears his or her own attorneys' fees. *Trustees v. Greenough*, 105 U.S. 527 (1882). The rationale for the common fund principle was explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. . . . Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit.

The common fund doctrine both prevents unjust enrichment and encourages counsel to protect the rights of those who have very small claims. The Supreme Court has emphasized that private actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [Securities and Exchange] Commission action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, 127 S. Ct. 2499 (2007).

Federal courts have therefore long recognized that fee awards in successful cases, such as the instant one, encourage the prosecution of actions on behalf of other individuals with valid claims, and thereby promote private enforcement of, and compliance with, important areas of federal and state law, including the federal securities laws. *See, e.g.*, *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) ("[C]ourts also have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce the securities laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid."); *Ressler v. Jacobson*, 149

F.R.D. 651, 657 (M.D. Fla. 1992) ("Attorneys who bring class actions are acting as 'private attorneys general' and are vital to the enforcement of the securities laws. Accordingly, public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions.").

In complex securities class actions, competent counsel for plaintiffs can be retained only on a contingent basis. Consequently, a large segment of the public would be denied a remedy for violations of the federal securities laws if fees awarded by the courts did not fairly and adequately compensate counsel for the services provided, the serious risks undertaken, and the delay before any compensation is received.

### B. The First Circuit Has Expressed a Preference for the Percentage of Fund Method in Awarding Fees in Common Fund Cases

Courts generally favor awarding fees from a common fund based upon the percentage-of-the-fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig*., 56 F.3d 295, 305 (1st Cir. 1995) ("*Thirteen Appeals*") (citing Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, 63-64 (1994)). This is also true in this Circuit. *See Nilsen v. York County*, 400 F. Supp. 2d 266, 270 (D. Me. 2005) ("In the First Circuit, courts have discretion to award fees from a common fund 'either on a percentage of the fund basis or by fashioning a lodestar.'") (citation omitted). "As between the two methods, the First Circuit has noted that the percentage-of-funds method is the prevailing practice, and that it may have distinct advantages over the lodestar approach." *Id*. at 270-71. *See also In re Relafen Antitrust Litig*., 231 F.R.D. 52, 78 (D. Mass. 2005).

The First Circuit's most recent pronouncement on the subject is *Thirteen Appeals*. There, the district court awarded attorneys' fees of 31% of a $220 million settlement fund – *i.e.*, roughly $68 million. On appeal, the First Circuit held that "use of the [percentage of fund] method in common

fund cases is the prevailing praxis" based upon the "distinct advantages that the [percentage of fund] method can bring to bear in such cases." *Thirteen Appeals*, 56 F.3d at 307.[3]

Among the advantages recognized by the court in *Thirteen Appeals* was the fact that the percentage method is less burdensome to administer than the lodestar method, which "forc[es] the judge to review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended." *Thirteen Appeals*, 56 F.3d at 307. The court also acknowledged that the "shift in focus lessens the possibility of collateral disputes that might transform the fee proceeding into a second major litigation." *Id*. Moreover, the court recognized another important advantage of the percentage method, namely, that, unlike the lodestar method, it does not create a "'disincentive for the early settlement of cases.'" *Id*. (citation omitted). The percentage method more closely aligns plaintiffs' counsel's interests with the interests of the class. *Id.*

Additionally, the First Circuit in *Thirteen Appeals* noted that the percentage approach promotes more efficient use of attorney time because it is result-oriented. In contrast, the lodestar method, which is linked to time spent in obtaining a result, creates a disincentive for early settlement of cases and rewards unproductive behavior. The court recognized that the percentage method also better reflects the market value of counsel's services

> because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. We think that Judge Posner captured the essence of this point when he wrote that "the market in fact pays not for the individual hours but for the ensemble of services rendered in a

[3] The First Circuit noted that two Courts of Appeals had expressly ***required*** the use of percentage awards in common fund cases. *E.g.*, *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993). The Third Circuit has expressed a similar view. *See* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255 (Oct. 8, 1985), cited in *Thirteen Appeals*, 56 F.3d at 306.

> case of this character." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). In fine, the market pays for the result achieved.

*Thirteen Appeals*, 56 F.3d at 307.

Further, application of the percentage approach in securities class actions is supported by the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." *See* 15 U.S.C. §78u-4(a)(6). Moreover, "in class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable." *Global Crossing*, 225 F.R.D. at 466. This presumption of reasonableness "'ensure[s] that the lead plaintiff, not the court, functions as the class's primary agent vis-a-vis its lawyers.'" *Id.* (quoting *Cendant*, 264 F.3d at 282). Moreover, the fee agreement between the Lead Plaintiff and Lead Counsel is "'precisely the type of bargaining that the PSLRA anticipated and to which a court reasonably may give substantial deference.'" *Global Crossing*, 225 F.R.D. at 468 n.16 (citation omitted). In enacting the PSLRA, Congress expressed its strong belief that an institutional lead plaintiff would be in a better position than the court to protect the interests of the class by monitoring lead counsel throughout the litigation and by negotiating a reasonable fee for counsel's representation. *Cendant*, 264 F.3d at 276 (holding that Congress believed that "institutional investors would likely do a better job than courts at selecting, retaining, and monitoring counsel than courts have traditionally done").

Finally, percentage fee awards in such cases "ensure that those who are engaged in the plaintiff's side of securities litigation are not unduly discouraged from prompt resolution of these cases and full pursuit of the claims of plaintiffs who, absent such counsel, would be unlikely to have any vindication of the rights that they have in this setting." *In re Sequoia Sys. Sec. Litig.*, [1993-1994 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶98,089, at 98,730 (D. Mass. Sept. 10, 1993).

### C. The Requested Twenty-Five Percent Fee Award Is Well Within the Applicable Range of Percentage of Fund Awards

In selecting an appropriate percentage award, both the Supreme Court and the First Circuit have recognized that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Thirteen Appeals*, 56 F.3d at 307. The ordinary contingency fee arrangement is for one-third or more of the settlement fund. *See Furtado v. Bishop*, 635 F.2d 915, 917 (1st Cir. 1980); *accord Blum*, 465 U.S. at 903 * ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

Courts in this Circuit and elsewhere frequently award attorneys' fees of twenty-five percent or more of the settlement fund in securities class actions. *See, e.g., In re First BanCorp Sec. Litig.*, No. 3:05-cv-021418-GAG (D.P.R. Nov. 28, 2007) (27% of settlement fund); *In re Aspen Tech., Inc. Sec. Litig.*, No. 04-cv-12375-RCL (D. Mass. Mar. 6, 2006) (awarding 25% on $5,600,000 settlement fund); *Relafen*, 231 F.R.D. at 82 (awarding 33-1/3% plus expenses); *Deckler v. Ionics, Inc., et al.*, No. 03-CV-10393-WGY (D. Mass. Apr. 4, 2005) (30% of settlement proceeds); *In re Segue Software, Inc*., No. 99-10891-RGS (D. Mass. July 31, 2001) (33% of settlement fund); *Wilensky v. Digital Equip. Corp.*, No. 94-10752-JLT (D. Mass. July 11, 2001) (33-1/3% fee awarded); *Chalverus v. Pegasystems, Inc*., No. 97-12570-WGY (D. Mass. Dec. 19, 2000) (33% fee awarded); *In re Zoll Med. Corp. Sec. Litig*., No. 94-11579-NG (D. Mass. Oct. 5, 1998) (33-1/3% of settlement); *In re Copley Pharm., Inc. Sec. Litig*., No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (33-1/3% fee awarded); *In re Picturetel Corp. Sec. Litig*., No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (one-third of fund awarded); *Zeid v. Open Env't Corp.*, No. 96-12466-EFH (D. Mass. June 24, 1999) (one-third of fund awarded); *Morton v. Kurzweil Applied Intelligence, Inc*., No. 10829-REK (D. Mass. Feb. 4,

1998) (one-third of settlement fund); *In re Bay Fin. Corp. Sec. Litig.*, No. 89-2377-WD (D. Mass. Nov. 4, 1996) (35% of settlement fund).[4]

Lead Plaintiff's counsel's request for attorneys' fees of 25% of the Settlement Fund is therefore well within the range of numerous prior percentage awards made in this Circuit and elsewhere.

**D. The Relevant Factors Support Lead Plaintiff's Counsel's Fee Request**

In addition to examining fee awards in similar cases, courts within this Circuit and elsewhere typically examine a variety of factors to determine whether a percentage request is fair and reasonable, including *inter alia:* the amount of the recovery; the skill and efficiency of counsel; the complexity of the litigation; the risk of non-payment; and the presence or absence of substantial objections by members of the class. *Relafen*, 231 F.R.D. at 84. Each of these factors, and other factors considered by the courts, weigh heavily in support of the 25% fee request in this case.

**1. The Amount of the Recovery**

It is difficult to dispute that the benefit Lead Plaintiff's counsel conferred on the Class – $5,000,000 in cash plus corporate governance reforms and enhancements – is an excellent result. This is especially true where, as here, the case was fraught with risks and uncertainties, including the

---

4 *See also e.g.*, *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494 (D.D.C. 1981) (45% of settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D.N.Y. 1979) (53.2% of settlement fund), *aff'd*, 622 F.2d 1106 (2d Cir. 1980); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); *City Nat'l Bank v. Am. Commonwealth Fin. Corp.*, 657 F. Supp. 817 (W.D.N.C. 1987) (one-third of the recovery); *In re Franklin Nat'l Bank Sec. Litig.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,571 (E.D.N.Y. June 24, 1980) (34% of settlement fund); *Baron v. Commercial & Indus. Bank of Memphis*, [1979-1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,132 (S.D.N.Y. Oct. 3, 1979) (36.5% of settlement fund); *Adams v. Standard Knitting Mills, Inc.*, No. 8052, 1978 U.S. Dist. LEXIS 20317 (E.D. Tenn. Jan. 6, 1978) (35.15% of settlement fund); *Hwang v. Smith Corona Corp.*, B 89-450 (TFGD) (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226 (D. Minn. June 2, 1993) (one-third of settlement fund).

formidable and determined opposition of Defendants, who have consistently denied any wrongdoing. As described in the Rudman Declaration and in the accompanying settlement brief, there existed the very real possibility that Lead Plaintiff would be unable to prove its claims, including the risk that Lead Plaintiff would not have succeeded in convincing a jury that Defendants possessed the requisite scienter or that many of the statements at issue were materially false and misleading. Rudman Decl., ¶41. In addition, Lead Plaintiff faced significant hurdles to demonstrating loss causation and damages. *See Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 341 (2005); Rudman Decl., ¶¶42-43. In light of these obstacles, this Settlement represents an extraordinary result for the Class.

### 2. The Skill and Efficiency of Counsel

Lead Plaintiff's counsel are prominent and experienced plaintiffs' securities law firms. *See In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *38 (C.D. Cal. June 10, 2005) ("The experience of counsel is also a factor in determining the appropriate fee award.").[5] As the court recognized in *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987), the "prosecution and management of a complex national class action requires unique legal skills and abilities." It is particularly important to reward attorneys with skill and standing for pursuing such cases as "the stated goal in percentage fee-award cases of 'ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (citation omitted). *See also Tellabs*, 127 S. Ct. 2499.

The quality and efficiency of the services provided in this case by Lead Plaintiff's counsel is evidenced by the substantial recovery obtained for the Class even though there was significant risk

---

[5] The experience of the law firms that represented Lead Plaintiff in this action is set forth in the accompanying declarations of Lead Plaintiff's counsel, submitted herewith.

that a trial might have resulted in a finding for Defendants on liability or damages, or resulted in a lower judgment amount.

Lead Plaintiff's counsel's skill and efficiency in representing Lead Plaintiff and the Class is also exemplified by the quality of the opposition in this case. Foley Hoag, LLP, counsel for Defendants, are skilled and experienced in defending actions such as these. The Settlement clearly reflects Defendants' awareness of Lead Plaintiff's counsel's ability and readiness to go to trial if a fair settlement could not be achieved. The ability of Lead Plaintiff to obtain an excellent Settlement for the Class in the face of such formidable legal opposition further confirms the superior quality of its counsel's representation. *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) ("'The quality of representation is best measured by results.'") (citation omitted).

### 3. The Complexity of the Litigation and the Significant Obstacles to Recovery

The complexity and risk of the litigation also support the requested fee award in this case. As recognized by courts throughout the country, securities class actions, especially following the passage of the PSLRA, are inherently complex. *See, e.g.*, *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 1506, 2005 U.S. Dist. LEXIS 14772, at *47-*48 (E.D. Mo. June 30, 2005) ("Securities fraud class actions are by their nature, complex and difficult to prove."); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 496 (E.D. Pa. 2003) (noting that securities litigation is a complex field); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). This action involved complex accounting principles and interpretation issues concerning Defendants' statements regarding product demand and quality control that were difficult to prove and explain to a jury. Throughout this litigation, Defendants vigorously contested issues of liability and damages and advanced arguments that, while partially unsuccessful at the motion to dismiss stage, might have persuaded a jury to find in their favor.

In order for Lead Plaintiff to prove its claims at trial, it would have to prove that the Defendants made material misstatements and, with respect to its claims asserted under §10(b), that they were made with scienter. Scienter, "a mental state embracing intent to deceive, manipulate, or defraud" (*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)), is an essential element of a §10(b) claim. To establish Defendants' scienter in this Circuit, Lead Plaintiff must prove either that the "'defendants consciously intended to defraud, or that they acted with a high degree of recklessness.'" *Ezra Charitable Trust v. Tyco Int'l, Ltd.*, 466 F.3d 1, 6 (1st Cir. 2006) (citation omitted). Lead Plaintiff also must prove that the Registration Statement for KVH's secondary offering contained material misstatements. Throughout the litigation, Defendants argued that they had absolute defenses to Lead Plaintiff's claims. Specifically, Defendants argued forcefully that the alleged misstatements were not false or misleading and, if they were false or misleading, they were not material, because sales results of the product at issue were not material to the Company's financial results; that any alleged misstatements were not made with scienter, because Defendants were not aware of the allegedly fictitious sales at the time of their public statements; and that the Class could not establish loss causation, because the end of the Class Period statement that led to the decline in KVH stock did not specifically refer to declining sales of the A5, the product at issue. Rudman Decl., ¶¶21-22. Nearly all of the witnesses testifying about Defendants' conduct would have been current and former Company employees or directors, and would be unlikely to materially assist Lead Plaintiff in proving its case. Many of the documents in this action are dense financial statements, and documents concerning product quality, and it is far from certain that Lead Plaintiff's counsel could present them in a manner that would convince a jury to find in the Class's favor.

**4. The Risk of Non-Payment**

Unlike defense counsel who have been paid on a current basis, Lead Plaintiff's Counsel diligently and vigorously pursued this case on an entirely contingent fee basis. Courts have

recognized that the risk of non-payment in complex cases such as this one is very real and heightened when, as in this case, Lead Plaintiff's counsel press to achieve the very best result for those they represent.

**5. Public Policy Favors the Requested Fee**

The requested fee award would also be consistent with public policy and judicial economy interests that support the expeditious settlement of cases. As noted in *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002):

> [E]fficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality of Plaintiffs' Class Counsel's representation here . . . . "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." In the context of a complex class action, early settlement has far reaching benefits in the judicial system.

*Id.* at 373 (quoting *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 101-02 (3d Cir. 1985)). *Accord In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 133 (D.N.J. 2002) ("Informal discovery leading to an early settlement that avoids such costs [of formal discovery] favors approval of the fee application."); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *21 (S.D. Cal. Aug. 30, 1990) ("Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements – especially in complex class action cases – should be done.").

Judge David S. Doty of the District of Minnesota recently observed, in *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005), that early settlements are consistent with the purposes of the Federal Rules of Civil Procedure, which "'shall be construed and administered to ensure the ***just, speedy, and inexpensive determination*** of every action.'" (quoting Fed. R. Civ. P. 1) (emphasis in original). "Under Rule 1, as officers of the court, attorneys share the responsibility with the court of ensuring that cases are 'resolved not only fairly, but without undue cost or delay.'" *Id*. (citing Fed. R. Civ. P. 1 Advisory Committee Notes, 1993 Amendments). Lead Plaintiff's counsel have likewise litigated this case efficiently, and, for their efforts, seek approval of a 25% fee.

**E. The Reaction of the Class Favors the Requested Fee**

Finally, the favorable reaction of the Class Members also supports the reasonableness of the fee request. The Notice advised potential Class Members that Lead Plaintiff's counsel would apply to the Court for a fee not to exceed 25% of the Settlement Fund and expenses not to exceed $180,000.00. Only one Member of the Class has objected to the fee or expense request, and that objection misstates the amount of fees and expenses sought by Lead Plaintiff's counsel. *See* Notice of Objection. Consequently, the favorable reaction of the Class further supports the requested fee award. *See, e.g.*, *Sequoia Sys.*, ¶98,089, at 98,729; *Ressler*, 149 F.R.D. at 656 (a lack of objections is "strong evidence of the propriety and acceptability" of the fee request).

**F. The Fee Request Is Also Fully Justified Under the Lodestar/Multiplier Approach**

The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee. *Relafen*, 231 F.R.D. at 81. Nevertheless, the requested fee is also reasonable under the lodestar method of analysis. As reflected in the accompanying declarations, petitioners have devoted 2,324 hours and $1,021,992.75 in time charges, at current hourly rates,[6] to the prosecution and settlement of this complex litigation. The requested fee amounts to a reasonable multiple of counsel's lodestar.

In reviewing an application for an award of attorneys' fees in a class action, a "risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for their services.'" *Florin v. NationsBank, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (quoting *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992)). Moreover, as the Seventh Circuit has stated, "[t]he need for such an adjustment is particularly acute in class action

---

[6] The Supreme Court has held that the use of current rates is proper because those rates more adequately compensate for inflation and loss of use of funds. *Jenkins*, 491 U.S. 274.

suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *Cont'l Ill.*, 962 F.2d at 569. In this case, Lead Plaintiff's counsel's fee award was entirely contingent on whether they successfully prosecuted and/or settled this litigation.

The slight multiplier reflected here falls well below the range of multipliers found reasonable for cross-check purposes by courts throughout the country, and is fully justified here given the effort required, the risk faced and overcome and the results achieved. *See, e.g.*, *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (D. Mass. 1998) (awarding multiplier of 8.9); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735-36 (E.D. Pa. 2001) (25% fee representing 10.73 multiplier); *In re RJR Nabisco Sec. Litig.*, MDL No. 818, 1992 U.S. Dist. LEXIS 12702, at *22 (S.D.N.Y. Aug. 24, 1992) (approving fees of over $17.7 million, notwithstanding objection that such award of fees represented a multiplier of six); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (multiplier of 9.3); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (multiplier of 8.74); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approving multiplier of 3.97 and noting that "'[i]n recent years multipliers of between 3 and 4.5 have become common'") (citation omitted); *Kurzweil v. Philip Morris Cos.*, 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378, at *8 (S.D.N.Y. Nov. 30, 1999) (noting that multipliers between 3 and 4.5 are common in federal securities cases).

Indeed, the very nature of contingent fees means that counsel are taking considerable risks in prosecuting cases on a contingent fee basis. In some cases, counsel are not successful and receive no fee for their efforts. In other cases, counsel receive a fee that is either less than, or approximately equal to their regular time charges, or lodestar. In yet other cases, such as this one, the risk counsel undertakes is rewarded when a reasonable percentage of the recovery provides a fee which is slightly in excess of their time charges.

### G. The Expenses Incurred by Lead Plaintiff's Counsel Were Reasonable

As demonstrated in the declarations of counsel submitted herewith, Lead Plaintiff's counsel have incurred expenses of $168,924.76 in successfully prosecuting this action. These expenses included costs for, among other things, filing fees, service of process, travel, legal research, copying and consultants. The expenses for which reimbursement is sought herein are the type of expenses for which "the paying, arms' length market" reimburses attorneys, and they are properly chargeable to the settlement fund. *See, e.g., Cont'l Ill.*, 962 F.2d at 570. They are reasonable and necessary within the parameters set by this Circuit. *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) (class counsel creating a common fund is entitled to recover "expenses, reasonable in amount, that were necessary to bring the action to a climax").

As noted above, no Class Member has objected to the amount of expenses being sought by Lead Plaintiff's counsel. The positive reaction of the Class further supports the requested expense award. *See, e.g., Sequoia Sys.*, ¶98,089, at 98,729.

## III. PLAINTIFF IRVING BRAUN IS ENTITLED TO AN AWARD PURSUANT TO 15 U.S.C. §77z-1(a)(4)

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." *See* 15 U.S.C. §77z-1(a)(4). Irving S. Braun requests reimbursement of $4,375.00. As set forth in the Declaration of Irving S. Braun in Support of Application as Representative Plaintiff for Reimbursement of Costs and Expenses, submitted herewith, Mr. Braun devoted substantial time to the oversight of, and participation in, the litigation, including reviewing pleadings, preparing for and sitting for a deposition, complying with Defendants' discovery requests

and consulting with plaintiffs' counsel. The amount requested will only reimburse him for his expenses (including lost wages) directly relating to his representation of the Class.[7]

## IV. CONCLUSION

For all of the foregoing reasons, Lead Plaintiff's counsel respectfully request that the Court award: (i) attorneys' fees of 25% of the Settlement Fund; (ii) expenses in the amount of $168,924.76, plus interest on both amounts; and (iii) an award of $4,375.00 to Plaintiff Irving S. Braun.

DATED: January 11, 2008

Respectfully submitted,

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
ELLEN GUSIKOFF STEWART

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
RUSSELL J. GUNYAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Lead Counsel for Plaintiffs

[7] The Notice states that plaintiff may seek reimbursement of expenses. There have been no objections to this provision.

BARRY J. KUSINITZ (No. 1404)
155 South Main, Street, Suite 405
Providence, Rhode Island 02903
Telephone: 401/831-4200
401/831-7053 (fax)

Liaison Counsel

S:\Settlement\KVH.set\BRF FEE 00048236.doc

CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 11, 2008.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:elleng@csgrr.com

# Mailing Information for a Case 1:04-cv-00306-ML-DLM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Russell J. Gunyan**
  rgunyan@csgrr.com,e_file_ny@csgrr.com
- **Barry J. Kusinitz**
  bkusinitz@bdglawyers.com
- **Brooks R. Magratten**
  bmagratten@vetterandwhite.com
- **Matthew F. Medeiros**
  mfm@lmkbw.com,dcabral@lmkbw.com
- **Samuel H. Rudman**
  srudman@csgrr.com
- **Ellen Gusikoff Stewart**
  elleng@csgrr.com
- **Benjamin V. White , III**
  bwhite@vetterandwhite.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Matthew C. Baltay**
Foley Hoag, LLP
155 Seaport Blvd.
Boston, MA 02210

**David A. Rosenfeld**
Lerach Coughlin Stoia Geller Rudman & Robbins
200 Broadhollow Road
Suite 406
Melville, NY 11747

**Brandon F. White**
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

Manual Service List
*Sekuk Global Enterprises v. KVH Industries, et al.*
Case No. 1:04-cv-00306-ML-DLM

Curtis V. Trinko
Law Offices of Curtis V. Trinko LLP
16 West 46th Street, Seventh Floor
New York, NY 10036
212/490-9550
212/986-0158 (Fax)

Jeffery K. Thornell
Sandra C. Thornell
Objectors
P.O. Box 780022
San Antonio, TX 78278
210/854-7744