UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SEKUK GLOBAL ENTERPRISES, On Behalf of Itself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KVH INDUSTRIES, INC., MARTIN A. KITS VAN HEYNINGEN, and PATRICK J. SPRATT,<br><br>Defendants. | Civil Action No. CA-04-306L<br>**(Consolidated Action)**<br><br>CLASS ACTION |

**DECLARATION OF SAMUEL H. RUDMAN IN SUPPORT OF MOTION FOR ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, APPROVING PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

I, SAMUEL H. RUDMAN, declare as follows:

1. I am a member of Coughlin Stoia Geller Rudman & Robbins LLP ("CSGRR"),[1] counsel for the Lead Plaintiff[2] in this action. I was actively involved in the prosecution of this action (hereinafter, the "Litigation"), am familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my active supervision and participation in all material aspects of the Litigation

2. I submit this declaration in support of Lead Plaintiff's application pursuant to Rule 23 of the Federal Rules of Civil Procedure for approval of: (a) the Stipulation of Settlement dated as of July 26, 2007 (the "Stipulation") for a cash settlement of $5.0 million in cash (the "Settlement Fund") plus accrued interest, plus the adoption of corporate governance reforms designed to improve the manner in which KVH Industries, Inc. ("KVH" or the "Company") is operated; (b) Lead Plaintiff's counsel's application for attorneys' fees and expenses; and (c) the proposed Plan of Allocation of settlement proceeds. The Settlement Fund was deposited in an escrow account on September 20, 2007, and has been earning interest for the benefit of the Class since that date.

## I. PRELIMINARY STATEMENT

3. This is a securities class action brought on behalf of all purchasers of the securities of KVH between October 1, 2003 and July 2, 2004, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act").

4. For the past three-plus years, this case has been vigorously litigated. At every stage of the Litigation, counsel for Defendants have asserted aggressive defenses and expressed their

---

[1] In September 2007, counsel for Lead Plaintiff, Lerach Coughlin Stoia Geller Rudman & Robbins LLP informed the Court that its name had been changed to Coughlin Stoia Geller Rudman & Robbins LLP.

[2] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Stipulation of Settlement previously filed with the Court on July 27, 2007.

belief that the Class could not prevail on the claims asserted. The settlement was not achieved until Lead Plaintiff, *inter alia*:

- conducted detailed investigative interviews of numerous witnesses, including former KVH employees concerning the alleged fraud at KVH;
- drafted, prepared and filed a lengthy, detailed amended complaint alleging violations of the federal securities laws;
- briefed and argued a complicated motion to dismiss which was largely denied;
- successfully briefed Plaintiffs' motion to strike certain exhibits submitted by Defendants in support of their motion to dismiss;
- fully briefed Plaintiffs' motion for class certification and responded to Defendants' extensive discovery requests which included deposition testimony from both of Plaintiffs' proposed Class Representatives, the production of more than 2000 pages of responsive documents and responses to interrogatories;
- fully briefed Plaintiffs' opposition to Defendants' motion to compel the production of the identities of Plaintiffs' confidential informants, which motion was subsequently withdrawn;
- engaged in extensive discovery in support of Plaintiffs' claims including the review of more than 46,000 pages of documents produced by KVH, several of KVH's largest customers and the Company's outside auditors;
- consulted extensively with experts in the fields of accounting, causation and the amount of damages sustained by the Class;
- engaged in extensive negotiations at a full day mediation before the Honorable Layn R. Phillips (Ret.) of Irell & Manella LLP, during which the parties reached the settlement; and
- negotiated extensive corporate governance improvements at KVH.

5. This settlement is the product of hard-fought litigation and takes into consideration the significant risks specific to the case. It was negotiated by experienced counsel for Plaintiffs and Defendants who had a firm understanding of both the strengths and weaknesses of their respective cases. By the time the settlement was reached, Plaintiffs had extensively investigated the merits of their claims and had conducted significant motion practice and discovery which informed Plaintiffs that, while their case had strengths, it also had significant weaknesses, which, along with a number

of external factors, had to be, and were, conscientiously evaluated in determining what course, *i.e.*, whether to settle (and on what terms), or go to trial, was in the best interests of the Class.

6. Lead Plaintiff and its counsel believe that this settlement of $5.0 million in cash and corporate governance improvements is an excellent result, especially in light of the risks, facts and uncertainties in Plaintiffs' case. As detailed further herein, Plaintiffs were faced with complex legal and factual issues which could turn against them at any time in the litigation. At every possible juncture, Defendants repeatedly argued that Plaintiffs had failed to allege scienter – a key element of Lead Plaintiff's fraud claim – asserting that there were no facts to support that Defendants had knowledge of or participated in the alleged fraudulent scheme. Defendants also claimed that Lead Plaintiff could not demonstrate "loss causation," arguing that Plaintiffs and the Class did not suffer any "economic loss" from the alleged misstatements and omissions. Finally, Defendants argued that Plaintiffs' case was largely based on improper accounting allegations but KVH's auditors had never required the Company to restate its financial statements. Thus, according to Defendants, there was nothing to Plaintiffs' allegations of accounting fraud.

7. On balance, considering all the circumstances and risks both sides faced were there to be a trial, both Lead Plaintiff and Defendants came to the conclusion that settlement on the terms agreed upon was in the best interests of the Class.

8. Lead Plaintiff's counsel has prosecuted this action on a wholly contingent basis and has advanced or incurred all litigation expenses. By doing so, Lead Plaintiff's counsel has long-shouldered the risk of an unfavorable result. Lead Plaintiff's counsel has not received any compensation for their significant, nearly-four-year effort.

9. The fee application for 25% of the Settlement Fund recovered is fair both to the Class and Lead Plaintiff's counsel and warrants this Court's approval. This fee request is within the range of fees frequently awarded in these types of actions and is entirely justified in light of the substantial

benefits conferred on the Class, the risks undertaken, the quality of representation, and the nature and extent of legal services performed. As detailed further herein, at present market rates, Lead Plaintiff's counsel have a lodestar of $1,021,992.75. Thus, if the Court was to award the requested fee, Lead Plaintiff's counsel will receive virtually no risk premium for their effort.

10. Lead Plaintiff's counsel request approval for the expenses that they reasonably and necessarily incurred in prosecuting this complex securities action for the last four years. Lead Plaintiff's counsel's expenses total $168,924.76. This amount includes the substantial expense of hiring investigators, who helped us identify, locate and interview potential witnesses who were utilized in drafting and amending the Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws (the "Complaint"), and the hiring of a damages expert. Other expenses include photocopying, imaging and shipping of documents, travel expenses, deposition or court transcript fees, service and witness fees, and online factual and legal research. These expenses were reasonably and necessarily incurred to obtain this successful result.

11. The settlement clearly confers a substantial benefit on the Class, and eliminates the significant risks of continued litigation, the outcome of which was far from certain. It is respectfully submitted that the settlement should be approved as fair, reasonable and adequate; Lead Plaintiff's counsel should be awarded attorneys' fees of 25% of the Settlement Fund plus their expenses; and the Plan of Allocation should be approved.

12. The following is a summary of the nature of the Class's claims, the principal events which occurred during the course of this Litigation, and the legal services provided by Lead Plaintiff's counsel.

**A. FACTUAL SUMMARY OF PLAINTIFFS' ALLEGATIONS**

13. This action asserts claims on behalf of Lead Plaintiff Teamsters Affiliate Pension Plan ("TAPP") and Plaintiffs Irving S. and Judith Braun (collectively, the "Plaintiffs") and all other

persons who purchased the securities of KVH between October 1, 2003 and July 2, 2004, inclusive (the "Class Period"), seeking to pursue remedies under the Exchange Act and the Securities Act. Defendants in the action are KVH, Martin Kits Van Heynigen, the Company's Chief Executive Officer, and Patrick J. Spratt, its Chief Financial Officer (collectively, the "Defendants").

14. KVH develops and produces mobile communication and navigation devices for the consumer and defense markets. ¶25.[3] Prior to the Class Period, in early 2003, the Company began to experience a steady decline in sales of its most profitable products – navigation systems for military use. ¶33. Anticipating further erosion in these high-margin revenue streams, Defendants began to trumpet the anticipated product introduction of the A5 – a mobile satellite system that receives satellite TV transmissions in cars. KVH invested heavily in development of the A5, raising more than $19.5 million in private equity funding to research A5 development. ¶¶26-28.

15. Beginning in January 2003 and continuing throughout the Class Period, Defendants peppered the market with extraordinary claims of the anticipated demand for the A5, which caused rapid appreciation in the price of KVH common shares. ¶¶31-32, 35. This appreciation reached its peak in November 2003 when Defendants filed a shelf registration for a secondary public offering of KVH stock. ¶35. The Company completed this offering in February 2004, selling more than 2.7 million shares and raising more than $51 million in proceeds. ¶39. However, from the time of its initial release in the third quarter of 2003, the A5 was beset by problems and a lack of demand due to its high initial selling and production costs.

16. Rather than disclose these adverse facts known to or recklessly disregarded by Defendants, they instead engaged in a scheme to defraud investors by issuing false statements and misrepresenting the initial sales success of the A5. As detailed in the Complaint, defendants

[3] "¶ ___" references are to paragraphs of the Complaint.

reported fictitious sales of the A5 to investors, granted concessions to customers to artificially inflate A5 demand and withheld material information concerning A5 product returns and defects. ¶¶40-48.

17. The purported success of the A5's initial introduction was short-lived as the Company was forced to disclose declining A5 revenues and incur material losses from A5 inventory write-downs less than nine months after the A5's initial introduction and just five months after completion of the public offering. When these facts became public the price of KVH shares dropped precipitously, falling more than 20% from $12.50 per share to $10.15 per share, on heavy trading volume. ¶38. This represented a price decline of more than 68% when compared to the Class Period high reached on November 25, 2003. ¶36.

## II. HISTORY OF THE ACTION

### A. Initiation of the Action and Appointment of Lead Plaintiff

18. On July 21, 2004, Plaintiff Sekuk Global Enterprises filed the first action against Defendants.

19. On October 27, 2004, the Court appointed TAPP to serve as Lead Plaintiff and approved the selection of its counsel to serve as Lead Counsel and Barry J. Kusinitz to serve as Liaison Counsel.

### B. The Filing of the Complaint and Defendants' Motion to Dismiss

20. After an extensive investigation, including interviews of numerous witnesses, Plaintiffs filed the Complaint on November 19, 2004.

21. On January 14, 2005, Defendants moved to dismiss the Complaint and the parties engaged in extensive briefing. The focus of Defendants' motion to dismiss was the legal issues of scienter and loss causation, although Defendants' raised numerous other issues as well. With respect to scienter, Defendants argued that the Complaint failed to allege any facts which could establish their knowledge of the alleged fraudulent scheme to overstate A5 revenues and misrepresent the successful rollout of the A5. In response, Plaintiffs successfully argued that the Complaint's

allegations of systemic fraudulent activities concerning sales of the A5, upon which the Company's operating success was dependent, evidenced Defendants' recklessness, and that Defendants were highly motivated to overstate revenues and sales of the A5 in order to ensure the success of the Company's public offering, which occurred just three months after the A5's introduction.

22. Additionally, Defendants argued that Plaintiffs' claims lacked loss causation because the statement at the end of the Class Period, which immediately preceded a 20% drop in the price of KVH common shares, did not specifically refer to declining sales of the A5. In response, Plaintiffs argued, among other things, that the end of the Class Period statement on July 6, 2004, which reported declining revenues in "land mobile satellite" sales to "RV customers" referred to declining A5 sales, thus satisfying Plaintiffs' pleading burden. At a minimum, the parties would have vigorously contested the issue of loss causation for the duration of the litigation.

23. On March 28, 2005, Plaintiffs moved to strike certain exhibits submitted in support of Defendants' motion to dismiss. The disputed exhibits were documents that were not referenced in the Complaint.

24. On May 10, 2005, the Court heard extensive oral argument on Defendants' motion to dismiss. At the hearing, the Court granted Plaintiffs' motion to strike in its entirety and reserved decision on Defendants' motion to dismiss.

25. On August 12, 2005, the Court issued a memorandum and order granting in part and denying in part Defendants' motion to dismiss. The Court largely sustained Plaintiffs' Exchange Act claims and Securities Act claims but found certain of Defendants' statements nonactionable under the securities laws.

26. On October 14, 2005, Defendants answered the Complaint and asserted affirmative defenses. On December 9, 2005, the Court entered its Case Management Order, setting the close of

discovery during February 2007 and ordering the preparation of pre-trial memorandums during July 2007.

27. The parties then commenced merits discovery and class certification proceedings.

## III. CLASS CERTIFICATION AND MERITS DISCOVERY

28. On December 13, 2005, Plaintiffs moved for class certification. During class discovery, Lead Plaintiff TAPP and Plaintiff Irving S. Braun produced more than 2,000 pages of responsive documents, provided answers to Defendants' extensive interrogatories and sat for depositions. Oral argument on Plaintiffs' motion was pending when the parties agreed to settle the action.

29. Plaintiffs began aggressively pursuing merits discovery in early 2006 by serving document subpoenas on several of the Company's major customers as well as the Company's external auditors. Plaintiffs served their first request for documents on Defendants in March 2006 and have reviewed more than 46,000 pages of non-public documents to support their claims.

## IV. SETTLEMENT NEGOTIATIONS AND TERMS OF THE SETTLEMENT

30. On August 23, 2006 the parties attempted to mediate a resolution of this case before the Honorable Layn R. Phillips (Ret.) of Irell & Manella LLP (the "Mediation").

31. During the full day Mediation, the parties had a full and frank discussion about the strengths and weaknesses of Plaintiffs' claims. In addition, Defendants shared information about KVH and its business and provided their explanation of events that took place during the Class Period. Throughout the Mediation, Judge Phillips provided both sides with a candid assessment of their respective cases. At the end of the Mediation, the parties agreed to the $5.0 million Settlement Fund that is presently before the Court and agreed to negotiate significant corporate governance improvements at KVH.

32. Following the Mediation, several months of intense negotiations followed centering on Plaintiffs' proposed corporate governance reforms and other specific terms of the Settlement.

33. Ultimately, after extensive negotiations the parties agreed to the corporate governance reforms, as detailed below. The Stipulation of Settlement was agreed to and signed on July 26, 2007, and filed with the Court on July 27, 2007. The settlement agreement provides that KVH will pay $5 million in cash to the Class and institute certain corporate governance reforms, with the Class consisting of all purchasers of KVH common stock from October 3, 2003 to July 2, 2004.

34. The corporate governance reforms focus on enhancing the Company's accounting and financial controls, specifically, relating to revenue recognition and external reporting practices. The reforms ensure these controls are effectively instituted and functioning by prescribing on-going communications and reporting by and between KVH management, the board's audit committee and the Company's external auditors. The reforms require the audit committee to invite input and commentary concerning the quality of the Company's disclosure program, the level of financial transparency and risk assessment from major shareholders. In addition, the reforms require KVH to maintain a confidential "hotline" for receiving, retaining, and treating employee complaints associated with accounting and internal auditing practices and illegal behavior. In sum, the agreed-to corporate reforms directly address the issues raised by Plaintiffs in this case.

35. Plaintiff moved for preliminary approval of the settlement on July 27, 2007. On September 7, 2007, this Court granted preliminary approval of the settlement, and approved the form and manner of notice of the settlement to the Class.

36. The principal lawyers involved in the settlement negotiations are well known for their effective representation. I led the negotiations from the Plaintiffs' side. I have years of experience in the effective prosecution and resolution of complex securities class actions. Brandon White of Foley Hoag, LLP led the defense team for KVH and the Individual Defendants. Defense counsel's credentials in the vigorous and effective defense of this case are similarly unquestionable.

37. Lead Plaintiff's counsel is actively engaged in complex federal civil litigation, particularly the litigation of securities class actions. Our experience in the field allowed us to identify the complex issues involved in this case and to formulate strategies to effectively prosecute them. We believe that our reputations as attorneys who will zealously carry a meritorious case through the trial and appellate levels, as well as our demonstrable ability to vigorously develop the evidence in this case, put us in a strong position in settlement negotiations with the Defendants and their insurance carriers.

38. The Stipulation resulted from vigorous arm's-length negotiations. In the estimation of Lead Plaintiff's counsel, the compromise embodied in the Stipulation with the Defendants represents a successful resolution of a very complex and risky class action.

39. Upon approval of the Stipulation by the Court and entry of a judgment that becomes a final judgment, and upon satisfaction of the other conditions to the settlement, the Settlement Fund will pay for certain administrative expenses, including the cost of providing notice to the Class; the cost of publishing newspaper notice; payment of taxes assessed against the Settlement Fund; costs associated with the processing of claims submitted; and to pay Lead Plaintiff's counsel's fees and expenses, and any award to Plaintiff Irving S. Braun. The balance of the Settlement Fund (the "Net Settlement Fund") will be distributed according to the Plan of Allocation to Class Members who submit valid, timely Proof of Claim forms.

## V. THE STRENGTHS AND WEAKNESSES OF THE CASE

40. After extensive investigation into their claims, which included interviews with confidential witnesses, the review of documents obtained from KVH, the Company's auditors, several major KVH customers and a thorough review of the legal sufficiency of its claims by the Court, Plaintiffs believed that they were well on their way to developing evidence to sustain the heart of the allegations in this case, but realized that they also faced considerable risks and defenses.

41. Whether Plaintiffs would have been able to establish Section 10(b) liability was a very real uncertainty in this case. The core issue in the case was scienter: *i.e.*, whether Defendants were aware of the misleading nature of their statements concerning the actual number of A5 units sold during the fourth quarter of 2003, the final quarter prior to the public offering in February 2004. Although Plaintiffs believed that the allegations concerning fictitious sales of A5 during the fourth quarter of 2003 would be borne out by the evidence, they understood that there was a significant risk after the completion of discovery that proof of Defendants' awareness of the fictitious sales at the time their statements were made would lead to a jury question which could be decided in Defendants' favor. Throughout the proceedings, Defendants insisted that all of KVH's sales were proper and any sales issues were not material to its financial results. An adverse judgment on Plaintiffs' Section 10(b) claim would greatly diminish any potential recovery by Class members.

42. Similarly, Defendants would undoubtedly continue to raise the issues of loss causation. This Court had found, as Plaintiffs had argued, that Defendants' end of the class period statement could plausibly be read to include declining sales results for the A5 thereby sufficiently alleging loss causation. However, the risk remained that upon the completion of discovery the Court could find that Plaintiffs' interpretation of the statements was not reasonable causing a reversal on this key legal issue.

43. Even if Plaintiffs were able to demonstrate liability, there were serious issues regarding damages. Defendants claimed that Lead Plaintiff could not demonstrate damages stemming from price declines of KVH securities that occurred prior to the Company's July 6, 2004 end of Class Period announcement, leading to a battle of experts concerning the numerous factors affecting the price of KVH securities and determination of price declines related to Plaintiffs' claims.

44. In short, Plaintiffs faced numerous obstacles in establishing both liability and damages. There was no certainty, given Defendants' vigorously asserted defenses, that Plaintiffs

would prevail on either liability or damages, or at the level of damages asserted. The proposed settlement eliminates these and many other risks of continued litigation.

## VI. THE SETTLEMENT IS IN THE BEST INTERESTS OF THE CLASS AND WARRANTS APPROVAL

45. Plaintiffs believe that they could well have prevailed on the merits of the case. Defendants were just as adamant that Plaintiffs would fail. There was a very real risk that Plaintiffs would not convince a jury that Defendants acted improperly or with scienter, or possibly even have survived a summary judgment motion. Moreover, even if Plaintiffs prevailed in showing liability, there were serious questions regarding damages and loss causation in this case, which further complicated Plaintiffs' chances for success.

46. Having considered the foregoing, and evaluating Defendants' likely defenses at trial, it is the informed judgment of Plaintiffs and their counsel, based upon all proceedings to date and counsels' extensive experience in litigating class actions under the federal securities laws, that the proposed settlement of this matter before this Court is fair, reasonable and adequate, and in the best interests of the Class.

## VII. THE PLAN OF ALLOCATION

47. Pursuant to the Notice Order entered by this Court on September 7, 2007, and as set forth in the Notice, all Class Members who wish to participate in the distribution of the Settlement Fund must submit a valid Proof of Claim form postmarked on or before December 31, 2007. The Net Settlement Fund shall be distributed according to the Plan of Allocation.

48. If approved, the Plan of Allocation will govern how the proceeds of the Settlement Fund will be distributed among Class Members.

49. The Proposed Plan of Allocation provides:

(a) The Net Settlement Fund will be distributed to Class Members who submit valid, timely Proof of Claim and Release forms ("Authorized Claimants") under the Plan of

Allocation described below. The Plan of Allocation provides that a Class Member will be eligible to participate in the distribution of the Net Settlement Fund only if the Class Member has a net loss on all transactions in KVH common stock during the Class Period.

(b) For purposes of determining the amount an Authorized Claimant may recover under the Plan of Allocation, Lead Plaintiff's counsel have consulted with their damage consultants and the Plan of Allocation reflects an assessment of the damages that they believe could have been recovered had Lead Plaintiff prevailed at trial.

(c) To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's claim, as defined below. If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants. Payment in this manner shall be deemed conclusive against all Authorized Claimants.

(d) A claim will be calculated as follows:

**Section 11 Claims**

For shares of KVH common stock <u>purchased pursuant to or traceable to the Registration Statement and Prospectus filed with the SEC in connection with the Company's common stock offering declared effective on or about February 10, 2004,</u> and

1) sold prior to July 21, 2004, the claim per share is the lesser of (i) the purchase price per share less the sales price per share, or (ii) $18.75 less the sales price per share.

2) retained at the end of July 21, 2004, the claim per share is the lesser of (i) the purchase price per share less $8.98, or (ii) $18.75 less $8.98.

3) sold after July 21, 2004, the claim per share is the lesser of:
a) the purchase price per share less the sales price per share, or
b) the purchase price per share less $8.98, or
c) $18.75 less $8.98, or
d) $18.75 less the sales price per share

**Section 10(b) Claims**

Class Period: October 1, 2003 – July 2, 2004

The allocation below is based on the following price declines:

1/2/04 Closing Price: $25.99
1/5/04 Closing Price: $22.85
1/5/04 Price Decline: $ 3.14

2/19/04 Closing Price:$17.15
2/20/04 Closing Price:$15.21
2/20/04 Price Decline:$ 1.94

7/2/04 Closing Price: $12.50
7/6/04 Closing Price: $10.15
7/6/04 Price Decline: $ 2.35

For shares of KVH common stock purchased between October 1, 2003 through January 2, 2004, and

a) sold prior to January 5, 2004 the claim per share is $0

b) sold between January 5, 2004 through February 19, 2004, the claim per share is the lesser of (i) the purchase price less the sales price, or (ii) $3.14 (1/5/04 Price Decline).

c) sold between February 20, 2004 through July 2, 2004, the claim per share is the lesser of (i) the purchase price less the sales price, or (ii) $5.08 (1/5/04 and 2/20/04 Price Declines).

d) retained at the end of July 2, 2004, the claim per share is the lesser of (i) the purchase price less $10.15 (7/6/04 Closing Price), or (ii) $7.43 (1/5/04, 2/20/04 and 7/6/04 Price Declines).

For shares of KVH common stock purchased between January 5, 2004 through February 19, 2004, and

a) sold prior to February 20, 2004 the claim per share is $0

b) sold between February 20, 2004 through July 2, 2004, the claim per share is the lesser of (i) the purchase price less the sales price, or (ii) $1.94 (2/20/04 Price Decline).

c) retained at the end of July 2, 2004, the claim per share is the lesser of (i) the purchase price less $10.15 (7/6/04 Closing Price), or (ii) $4.29 (2/20/04 and 7/6/04 Price Declines).

For shares of KVH common stock purchased between February 20, 2004 through July 2, 2004, and

a) sold prior to July 3, 2004, the claim per share is $0.

b) retained at the end of July 2, 2004, the claim per share is the lesser of (i) the purchase price less $10.15 (7/6/04 Closing Price), or (ii) $2.35 (7/6/04 Price Decline).

**Call Options**

1. For Call Options on KVH common stock *purchased* between October 1, 2003 through July 2, 2004, and,

a. *owned* at the end of one of the following dates: January 2, 2004, February 19, 2004, or July 2, 2004, the claim per Call Option is the difference between the price paid for the Call Option less the proceeds received upon the settlement of the Call Option contract;

b. *not owned* at the end of one of the following dates: 1/2/04, 2/19/04, or 7/2/04, the claim per Call Option is $0.

2. For Call Options on KVH common stock *written* between October 1, 2003 through July 2, 2004, the claim per Call Option is $0.

**Put Options**

1. For Put Options on KVH common stock *written* between October 1, 2003 through July 2, 2004, and

a. *owned* at the end of one of the following dates: 1/2/04, 2/19/04, or 7/2/04, the claim per Put Option is the difference between the amount paid upon settlement of the Put Option contract less the initial proceeds received upon the sale of the Put Option contract.

b. *not owned* at the end of one of the following dates: 1/2/04, 2/19/04, or 7/2/04 , the claim per Put Option is $0.

2. For Put Options on KVH common stock that were *purchased* between October 1, 2003 through July 2, 2004, the claim per Put option is $0.

Note: In the case the option was exercised for KVH common stock, the amount paid, or proceeds received, upon the settlement of the option contract equals the intrinsic value of the option using KVH common stock's closing price on the date the option was exercised.

Note: The combined recovery for the Call Options and Put Options shall not exceed three percent of the Net Settlement Fund.

50. Payment pursuant to the Plan of Allocation set forth above shall be conclusive against all Authorized Claimants. No Person shall have any claim against Lead Plaintiff's counsel or any claims administrator or Defendants or other person designated by Lead Plaintiff's counsel or Defendants or Defendants' counsel based on distributions made substantially in accordance with the

Stipulation and the settlement contained therein, the Plan of Allocation, or further orders of the Court. All Class Members who fail to complete and file a valid and timely Proof of Claim and Release form shall be barred from participating in distributions from the Net Settlement Fund (unless otherwise ordered by the Court), but otherwise shall be bound by all of the terms of the Stipulation, including the terms of any judgment entered and the releases given.

## VIII. COUNSEL'S APPLICATION FOR ATTORNEYS' FEES IS REASONABLE

### A. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method to Use in Awarding Attorneys' Fees in Common Fund Cases

51. For our extensive and successful efforts on behalf of the Class, Lead Plaintiff's counsel are applying for compensation from the Settlement Fund on a percentage basis. The percentage method is the appropriate method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the Class in achieving the maximum recovery in the shortest amount of time required under the circumstances. The First Circuit has long held that use of the percentage method in common fund cases is the prevailing practice and has recognized the distinct advantages that the percentage of the fund ("POF") method can bring to bear in such cases. *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (holding that in a common fund case the district court, in the exercise of its informed discretion, may calculate counsel fees either on a POF basis or lodestar).

### B. Consideration of Relevant Factors Justifies an Award of a 25% Fee in this Case

52. Lead Plaintiff's counsel seek a 25% fee award from the fund which they created and submit that such an award is reasonable and appropriate under the circumstances. Numerous factors are present here which justify this Court's award of a 25% fee.

### 1. The Excellent Settlement Achieved

53. Based on the many uncertainties in this case, including questions regarding scienter, materiality, loss causation and damages, this $5 million cash settlement and the corporate governance reforms instituted is an excellent result. Defendants' determined defense, if successful, would have precluded any recovery at all.

54. This favorable settlement was achieved as a result of very extensive and creative prosecutorial and investigative efforts, and contentious and complicated motions practice and settlement negotiations, as detailed herein. As a result of this settlement, hundreds of Class Members will benefit and receive significant compensation for their losses and avoid the very substantial risk of no recovery in the absence of a settlement. In addition, and just as important to the case component of the settlement, the corporate governance reforms will improve the Company for the benefit of those class members that continue to hold KVH stock. These corporate governances are of substantial value and further support Lead Plaintiff's counsel's fee and expense application.

### 2. Objections by Class Members to the Settlement or Requested Fee

55. The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, is an important factor in determining whether to approve a fee award. Here, the notice of the settlement and the requested fee has been sent to over 15,000 Class Members. In response, only one Class Member has objected to the fee request or the settlement and the time for such objection has expired. The sole objector, submitted by a purchaser of 50 shares of KVH common stock during the Class Period, mistakenly asserts that Lead Plaintiff's counsel are seeking a $5 million fee. As the Court is aware, Lead Plaintiff's counsel are requesting a fee of $1,250,000.

**3. The Risks as to Both Liability and Damages**

56. As discussed in greater detail above, this case was fraught with significant risk factors concerning liability. Plaintiffs' success was by no means assured. Defendants also disputed Plaintiffs' calculation of damages, and even whether Plaintiffs or the Class suffered any "economic loss" or damages under *Dura*. Were this settlement not achieved, Lead Plaintiff faced months or years of costly and risky continued litigation against the Defendants, with ultimate success far from certain. It is also possible that a jury could have found no liability or no damages. Lead Plaintiff's counsel is entitled to 25% of the Settlement Fund because of the specific risk factors involved in this case.

**4. The Diligent Prosecution of This Case**

57. A 25% fee is also warranted in light of the extensive efforts on the part of Lead Plaintiff's counsel, as outlined above, that were required to produce this settlement. Lead Plaintiff's counsel and their in-house professionals spent 2,324 hours of time on the case, *inter alia*, conducting formal and informal discovery, reviewing and analyzing documents, interviewing witnesses, mastering the relevant facts and dynamics of KVH's business, drafting the complaints and the Complaint and comprehensive memoranda of law concerning difficult and novel issues in connection with the motion to dismiss, motion to strike and discovery motion regarding confidential witnesses, attending Court hearings, formulating strategy, and working with experts and other consultants, in order to make effective arguments on the merits and to conduct meaningful settlement discussions.

**5. The Complexity of This Action's Factual and Legal Questions**

58. As demonstrated by the discussion above of the contested issues in the Litigation, had this settlement not been reached, the complex factual and legal questions at issue would continue to be the subject of substantial analysis and dispute. Numerous complex issues would be involved in proving liability, including whether Defendants' statements and omissions were false, whether the

statements and omissions were material, whether the statements and omissions were protected under the PSLRA or otherwise, whether Defendants acted with scienter, whether the alleged false statements and omissions were the legal cause of Plaintiffs' damages, whether KVH's stock traded at artificially inflated prices, and whether Plaintiffs and the Class suffered damages, as well as whether such damages could be proven, and the amount and proper calculation thereof.

### 6. The Contingent Nature of the Case and the Financial Burden Carried by Lead Plaintiff's Counsel

59. A determination of a fair fee must include consideration of the contingent nature of the fee, the financial burden carried by Lead Plaintiff's counsel and the difficulties which were overcome in obtaining the settlement.

60. This action was prosecuted by Lead Plaintiff's counsel on an "at-risk" contingent fee basis. Lead Plaintiff's counsel committed 2,324 hours of attorney and paraprofessional time for a "lodestar" of $1,021,992.75 and $168,924.76 in expenses in the prosecution of the Litigation, and fully assumed the risk of an unsuccessful result. Thus, counsel should be fairly compensated for their efforts. Lead Plaintiff's counsel have received no compensation for their services during the course of this Litigation, which has lasted almost four years, and have incurred very significant expenses in litigating for the benefit of the Class. Any fee award or expense reimbursement to Lead Plaintiff's counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award.

61. The requested fee of $1,250,000 is only 1.22 times the lodestar of Lead Plaintiff's counsel. In other words, Lead Plaintiff's counsel here expended substantial time and resources on a contingent basis and are receiving almost no premium for undertaking that risk.

62. Lead Plaintiff's counsel's efforts were performed on a wholly-contingent basis, despite significant risk and in the face of determined, relentless opposition with no governmental assistance. Under these circumstances, it necessarily follows that we are justly entitled to the award

of a reasonable percentage fee based on the benefit conferred and the common fund obtained. Under all of the circumstances present here, a 25% fee plus expenses is fair and reasonable.

## IX. CONCLUSION

63. During the course of this Litigation, at no time have I seen, experienced or been informed by an attorney or employee working at my direction of any conduct by counsel for Defendants that would constitute a violation of Rule 11 of the Federal Rules of Civil Procedure.

64. For all of the foregoing reasons, Lead Plaintiff's counsel respectfully request the Court to approve the settlement and Plan of Allocation and to approve the fee and expense application and award Lead Plaintiff's counsel 25% of the Settlement Fund plus $168,924.76 in expenses, plus the interest earned thereon at the same rate and for the same period as that earned on the Settlement Fund until paid.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of January, 2008, at Melville, New York.

SAMUEL H. RUDMAN

S:\Settlement\KVH.set\DEC Rudman.doc

CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 11, 2008.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:elleng@csgrr.com

# Mailing Information for a Case 1:04-cv-00306-ML-DLM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Russell J. Gunyan**
  rgunyan@csgrr.com,e_file_ny@csgrr.com
- **Barry J. Kusinitz**
  bkusinitz@bdglawyers.com
- **Brooks R. Magratten**
  bmagratten@vetterandwhite.com
- **Matthew F. Medeiros**
  mfm@lmkbw.com,dcabral@lmkbw.com
- **Samuel H. Rudman**
  srudman@csgrr.com
- **Ellen Gusikoff Stewart**
  elleng@csgrr.com
- **Benjamin V. White , III**
  bwhite@vetterandwhite.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Matthew C. Baltay**
Foley Hoag, LLP
155 Seaport Blvd.
Boston, MA 02210

**David A. Rosenfeld**
Lerach Coughlin Stoia Geller Rudman & Robbins
200 Broadhollow Road
Suite 406
Melville, NY 11747

**Brandon F. White**
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210

Manual Service List
*Sekuk Global Enterprises v. KVH Industries, et al.*
Case No. 1:04-cv-00306-ML-DLM

Curtis V. Trinko
Law Offices of Curtis V. Trinko LLP
16 West 46th Street, Seventh Floor
New York, NY 10036
212/490-9550
212/986-0158 (Fax)

Jeffery K. Thornell
Sandra C. Thornell
Objectors
P.O. Box 780022
San Antonio, TX 78278
210/854-7744